600 A.2d 493

STUART A. HIRSCH, M.D.; THE MEDICAL SOCIETY OF NEW JERSEY; AND THE NEW JERSEY SOCIETY OF OSTEOPATHIC PHYSICIANS AND SURGEONS, PLAINTIFFS–APPELLANTS, v. NEW JERSEY STATE BOARD OF MEDICAL EXAMINERS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 4, 1991—Decided December 20, 1991.

598

Before Judges COLEMAN, J.H., BILDER and STERN.

*Steven I. Kern* argued the cause for appellants (*Kern, Augustine, Conroy & Isele,* attorneys; *Steven I. Kern* and *Michael J. Schoppmann* on the brief).

*Steven N. Flanzman,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Steven N. Flanzman* on the brief).

The opinion of the court was delivered by

COLEMAN, J.H., P.J.A.D.

This is an appeal from the decision of the New Jersey State Board of Medical Examiners (Board) requiring physicians and podiatrists, as part of their biennial license renewal application,

to answer certain questions which some licensees found to be objectionable. The pivotal issue raised in this appeal is whether a licensee can assert the Fifth Amendment right against compelled self-incrimination without risking suspension of his or her medical license.

I

The controlling facts are not disputed: On or about June 1, 1991, the Board mailed a biennial license renewal application form to each physician and podiatrist licensed to practice medicine in New Jersey. *See N.J.S.A.* 45:1–7 and *N.J.S.A.* 45:9–6.1. Plaintiff Hirsch, a medical doctor licensed to practice in New Jersey with offices in Bridgewater, objects to some of the questions propounded. Similarly, plaintiffs Medical Society of New Jersey and New Jersey Society of Osteopathic Physicians and Surgeons, which jointly represent approximately 10,500 physicians licensed in the State, objected to some of the questions. The Board considered the objections and modified many of the questions and subparts.

Still dissatisfied with the modified questions, plaintiffs filed a notice of appeal on June 26, 1991 and sought emergent relief from this court. On June 27, 1991 we granted a stay as to questions 8, 9(a), (b), (d), (e), (f) and (g). We also granted a stay as to 9(c) to the extent of the inclusion of the words "arrested, charged or." Following our June 27 order, the Board modified questions 8 and some parts of question 9. Pursuant to our stay, some licensees have not answered the questions propounded in the 1991 biennial application for license renewal. As to those who answered, we directed in the June 27 order that their answers remain confidential and that no action or investigation be undertaken based on the answers to the objectionable questions.

On this appeal, plaintiffs contend that: (1) "questions 8 and 9 impair the legitimate, protected interest of physicians, as well as the public at large," and (2) "the Board is seeking to use the

application [renewal] process as an investigatory dragnet in abuse of its authority."

The latest version of questions 8 and 9 was served by the Board on plaintiffs on July 12, 1991. Those questions read as follows:

Question 8:

a. Has your license to practice medicine been conditioned, curtailed, limited, suspended or revoked in any way by any state medical licensing agency?

b. Have your privileges to practice medicine at any HMO, hospital or health care facility been conditioned, curtailed, limited, suspended or revoked?

c. Has your right to participate in Medicaid or Medicare been conditioned, curtailed, limited, suspended or revoked in any way?

d. Has your federal or state registration to prescribe, dispense or administer controlled dangerous substances been conditioned, curtailed, limited, suspended or revoked in any way by either the federal Drug Enforcement Agency or any state drug enforcement agency?

Question 9:

a. i. Is any disciplinary action pending against you now by any state medical licensing agency?

 ii. Is any action related to your conduct or patient care pending against you now at any HMO, hospital or health care facility?

 iii. Is any action pending against you now by Medicaid or Medicare?

 iv. Is there any action pending against you now by either the federal Drug Enforcement Agency or any state drug enforcement agency?

b. i. Have you ever been permitted to resign or surrender your license to practice medicine while under investigation or while disciplinary action was pending against you by any state medical licensing agency?

 ii. Have you ever been permitted to resign or surrender any privileges to practice medicine while under investigation or while an action was pending against you by any HMO, hospital or health care facility?

 iii. Have you ever been permitted to resign from Medicaid or Medicare while under investigation or while an action was pending against you?

 iv. Have you ever been permitted to surrender your registration to prescribe, dispense or administer controlled dangerous substances while under investigation or while an action was pending against you by either the federal Drug Enforcement Agency or a state drug enforcement agency?

c. Have you ever been arrested, charged or convicted for the violation of any law or regulation at any time during the past 10 years? Minor traffic offenses such as parking or speeding violations need not be listed, but motor vehicle offenses such as driving while impaired or intoxicated must be disclosed.

d. Have you been dependent upon alcohol or controlled dangerous substances at any time during the past 10 years?

e. Have you been treated for alcohol or drug abuse at any time during the past 10 years?

f. Have you suffered from or been treated for any mental illness or psychiatric problem at any time during the past 10 years?

g. Have you been granted a leave of absence by a healthcare facility, HMO, or any employer for reasons that relate to any physical, mental or emotional condition (other than parental leave) or any drug or alcohol problem at any time during the past 10 years?

h. Have you been named as a defendant in three or more malpractice suits during the past two years? The filing date of the complaint naming you as a defendant should be considered to be the date of the malpractice suit for purposes of responding to this question?

i. Have you ever been denied malpractice insurance coverage?

j. Have you ever had any practice curtailments imposed by any malpractice carrier?

k. Have you ever been assessed an individual surcharge based upon specific claims history by any malpractice carrier?

l. Has limitation ever been required by any malpractice carrier?

m. Have you ever been required by any malpractice carrier to have office monitoring?

If you answered yes to any question in item 8 and 9 above, explain in detail on a separate sheet, including dates of all incidents. Please indicate if you have revealed this previously to the Board.

## II

It is undisputed that some of the questions plaintiffs now find objectionable have been asked and answered in previous biennial renewal applications without objections. They are questions 8, 9(c), (i), (j), (k), (*l*) and (m). Consequently, plaintiffs do not challenge questions 9(i), (j), (k), (*l*) and (m) on this appeal.

Our careful study of the record persuades us to conclude that the challenge to the four subparts of question 8 and all of the subparts to question 9 except (b), (d), (e), (f) and (g) are without merit for the reasons which follow. Therefore, only questions 9(b), 9(d), 9(e), 9(f) and 9(g) will be addressed separately. Those five questions focus on physicians' and podiatrists' past or

present impairment based on drug or alcohol dependency or mental or emotional illness.

 The premise which undergirds this appeal is the notion that the physicians and podiatrists have a privacy interest which the questions impermissibly invade. In support of this contention, plaintiffs argue that one of the underlying policy considerations for the Professional Medical Conduct Reform Act of 1989 (Reform Act), *N.J.S.A.* 45:9–19.4 *et seq.*, effective January 12, 1990, is "to promote treatment [by other physicians] of practitioners [physicians and podiatrists] suffering from impairment or incompetence and to keep the facts of such treatment confidential from the Board."

We fully agree that one of the purposes of the Reform Act is to encourage impaired physicians and podiatrists to obtain proper rehabilitative treatment. When the Reform Act was enacted, the SCI had documented its conclusion that a voluntary system of reporting and rehabilitating potential or existing impaired licensees had not proven effective. Thus the Reform Act is an attempt to help rehabilitate presently impaired physicians.

Towards that end, the Reform Act mandates that certain steps be taken to implement a statewide program for dealing with impaired practitioners. The Reform Act, at *N.J.S.A.* 45:9–19.5a, directs that a practitioner, defined as a physician, medical resident, intern, or podiatrist, must notify the Board if that practitioner comes into "possession of information which reasonably indicates that another practitioner has demonstrated an impairment ... which would present an imminent danger to an individual patient or to the public health, safety or welfare." Only when a practitioner treats another physician or podiatrist for his or her impairment or incompetency is the practitioner not required to make a report to the Board. *N.J.S.A.* 45:9–19.5d.

In addition, the Reform Act has taken further steps to permit the Board to deal with impaired physicians and podiatrists.

Subsection 22 of the Reform Act, *L.*1989, *c.* 300, § 22, added a new section to the New Jersey Code of Criminal Justice respecting pretrial intervention. *N.J.S.A.* 2C:43–12j now requires the directors of Pretrial Intervention Programs to notify the Board "when a State licensed physician or podiatrist has been enrolled in a supervisory treatment program after he has been charged with an offense involving drugs or alcohol." Beyond that, the Reform Act even requires the courts to notify the Board upon receipt of a petition from a physician or podiatrist for expungement of a conviction for an offense involving drugs or alcohol. *N.J.S.A.* 2C:52–2d. Given this extended reporting requirement, we are satisfied that the Reform Act did not intend to place the Board in a "straight jacket" when eliciting information which would help identify presently impaired physicians and podiatrists. A proper questionnaire may be used for this purpose.

We interpret the questions propounded by the Board in the biennial application as an attempt to gain information that would assist it in making the determination of whether a physician or podiatrist is impaired. In that connection it must be remembered that "[a] license to practice a profession is not a basic individual right. While it embraces a substantial individual interest which deserves abundant protection, it cannot be equated with a fundamental right, the reasonable regulation of which can be measured and justified only by a compelling state interest. The right to practice medicine itself is granted in the interest of the public and is 'always subject to reasonable regulation in the public interest.' " *In re Polk License Revocation,* 90 *N.J.* 550, 570, 449 *A.*2d 7 (1982). *See also In re Martin,* 90 *N.J.* 295, 447 *A.*2d 1290 (1982); *Higgins v. New Jersey Bureau of Securities,* 100 *N.J.Super.* 266, 273, 241 *A.*2d 660 (App.Div.1968).

■■ Even though no statute limits the scope of the information which the Board may obtain in the biennial renewal form, standards of reasonableness must be applied. Measured

against a standard of reasonableness, we are satisfied the *subject matter* of questions 8 and 9 is appropriate.

### III

Next we must decide whether it is reasonable for the questions to cover a period greater than the two years that have lapsed since the last renewal. We believe it is reasonable for only the questions to which plaintiffs have objected, which are being asked for the first time following promulgation of the Reform Act, to cover a period greater than two years. Those are questions 9(b)(i) to (iv), 9(d), 9(e), 9(f) and 9(g). In our view, it is important for the Board to elicit information in the initial question for a ten year period so the Board will be better able to perform its function to the public. In future renewals, however, all questions previously asked must be limited to the two years since last renewal.

### IV

Questions 9(d), (e), and (g) pose special problems relative to the physicians' and podiatrists' Fifth Amendment protection. These questions ask a licensee whether the licensee has been dependent upon a controlled dangerous substance, treated for drug abuse, or granted a leave of absence from employment as a practitioner for any drug related problem during the last 10 years. If, for instance, a licensee became addicted to pain medication prescribed for a lower back condition by his or her treating physician, a truthful answer to those questions would not implicate the Fifth Amendment. But, if a physician or podiatrist who develops a drug addiction answered that the addiction was acquired through improper use of his or her authority to prescribe narcotics, or was acquired or continued through the use of drugs obtained in violation of the Controlled Dangerous Substance Act, *N.J.S.A.* 24:21–1 *et seq.*, now replaced by the Comprehensive Drug Reform Act of 1986, *N.J.S.A.* 2C:35–1 *et seq.*, such an answer to questions 9(d), (e)

and/or (g) could be incriminating. Since a prosecution for violating the State's drug laws may be commenced between one year and five years from the date of the offense, *N.J.S.A.* 2C:1–6b, the time period covered by the biennial application leaves a licensee exposed to possible prosecution. Consequently, compelled disclosure of information relative to drug abuse within the last five years may entitle some licensees to assert the Fifth Amendment privilege against compelled self-incrimination. *See Evid.R.* 25.

That brings us to the next question of whether the licensee is compelled to answer questions 9(d), (e) and/or (g). The renewal application informs the licensee that questions must be answered "or your renewal application will not be processed.... Failure to answer any questions, whether in part or in whole, or failure to answer them truthfully, may result in a denial of renewal, or a suspension or revocation of initial license issued in reliance upon inaccurate information submitted." In the same connection, *N.J.S.A.* 45:9–6.1, as amended, provides that any licensee who fails to obtain the biennial certificate of registration "shall be automatically suspended on ... July 1" of the year a renewal is required. Obtaining the certificate of registration is part of the biennial renewal process. Without our intervention, a licensee is compelled to answer the questions or suffer a nonrenewal, suspension or revocation of his or her license.

It is fundamental that the right to remain silent cannot be infringed through any penalty for asserting that right. *Lefkowitz v. Turley,* 414 *U.S.* 70, 76, 94 *S.Ct.* 316, 322, 38 *L.Ed.*2d 274, 281 (1973); *Gillhaus Beverage Co., Inc. v. Lerner,* 78 *N.J.* 499, 510, 397 *A.*2d 307 (1979); *In re Hotel and Restaurant Employees and Bartenders International Union Local 54,* 203 *N.J.Super.* 297, 338, 496 *A.*2d 1111 (App.Div.), *certif. denied,* 102 *N.J.* 352, 508 *A.*2d 223 (1985), *cert. denied,* 475 *U.S.* 1085, 106 *S.Ct.* 1467, 89 *L.Ed.*2d 723 (1986). Even though the Board has the authority to identify impaired physicians and

podiatrists, the Board may not violate a licensee's constitutional rights while pursuing its legitimate purpose. Fifth Amendment rights must be accorded full protection.

*Garrity v. New Jersey,* 385 *U.S.* 493, 87 *S.Ct.* 616, 17 *L.Ed.*2d 562 (1967), has a substantial bearing on this case. There, three police officers were questioned by state officials regarding alleged fixing of traffic tickets. The police officers were informed of their right to remain silent, but if they refused to answer questions they would be subject to removal from their positions as police officers. In precluding the use of the officers' statements, the Court stated "[t]he choice given to petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice ... is likely to exert such pressure upon an individual as to disable him from making a free and rational choice." *Garrity, supra,* 385 *U.S.* at 497, 87 *S.Ct.* at 618.

In *Spevack v. Klein,* 385 *U.S.* 511, 515–16, 87 *S.Ct.* 625, 628, 17 *L.Ed.*2d 574, 577–78 (1967), the Supreme Court held that an attorney who was subpoenaed to testify at his disbarment proceeding could assert the self-incrimination clause of the Fifth Amendment. The Court again observed that the privilege should not be watered down by imposing disbarment or loss of professional standing and livelihood as the price to pay for asserting the privilege. To the same effect, see *Gillhaus Beverage Company, Inc. v. Lerner, supra,* 78 *N.J.* at 509–510, 397 *A.*2d 307, holding that a licensed solicitor may not be threatened with loss of license for not answering a questionnaire based on the assertion of the privilege against self-incrimination.

It is significant that even though the licensees are compelled to answer questions 9(d), (e) and (g), there is no self-executing immunity implicated in this case which would avoid the coercive effect of supplying answers or suffering license

suspension. The only possible statutory immunity implicated is
*N.J.S.A.* 45:1–20. It provides:

> If any person *shall refuse to* testify or produce any book, paper, or other
> document *in any proceeding under this act* for the reason that the testimony
> or evidence, documentary or otherwise, required of him may tend to incriminate
> him, convict him of a crime, or subject him *to a penalty or forfeiture, and
> shall, notwithstanding, be directed to testify or to* produce such book, paper,
> or document by the Attorney General, he shall comply with such direction.
> A person who is entitled by law to, *and does assert such privilege,* and who
> complies with such direction of the Attorney General shall not thereafter be
> prosecuted or subjected to any penalty or forfeiture in any criminal proceeding
> which arises out of and relates to the subject matter of the proceeding. No
> person so testifying shall be exempt from prosecution or punishment for
> perjury or false swearing committed by him in giving such testimony or from
> any civil or administrative action arising from such testimony. [emphasis
> added]

Unlike some immunity statutes, the immunity provided in
*N.J.S.A.* 45:1–20 is not self-executing. *See State v. Vinegra,* 73
*N.J.* 484, 376 *A.*2d 150 (1977). Since there is no self-executing
immunity, if the licensee does not assert the privilege against
self-incrimination before answering the questions, he or she is
deemed to have waived the privilege. *See Manness v. Meyers,*
419 *U.S.* 449, 466, 95 *S.Ct.* 584, 595, 42 *L.Ed.*2d 574, 588 (1975);
*State v. Toscano,* 13 *N.J.* 418, 423, 100 *A.*2d 170 (1953); *United
States v. Garcia,* 544 *F.*2d 681, 685, n. 4 (3d Cir.1976). For
purposes of this appeal, we regard the licensee's refusal to
answer questions 9(d), (e) and/or (g) as an attempt to assert the
privilege against self-incrimination.

 Any licensee who asserts he or she has a well-
founded basis to believe that answering questions 9(d), (e)
and/or (g) would involve self-incrimination respecting drug use
or abuse, may assert the privilege against self-incrimination as
to the last five years.[1] If after doing so, the Attorney General
directly or through the Board instructs the licensee to answer

---

[1]The claim must be asserted in good faith and some basis for the claim must
exist. The Board is free to seek judicial review of the validity of the claim of
privilege, but that may be time consuming. *See State v. DeCola,* 33 *N.J.* 335,
350, 164 *A.*2d 729 (1960).

those questions, the licensee shall comply with such directions. By complying with the directive to answer the questions, the licensee automatically acquires immunity pursuant to *N.J.S.A.* 45:1–20.[2] Assertion of the privilege shall not affect the decision whether to renew the license.

If and when the privilege is asserted, the licensee must nonetheless answer all questions including 9(d), (e) and (g) except as they relate to drug use or abuse. A licensee wishing to assert the privilege as to the drug use or abuse aspect of questions 9(d), (e) and/or (g) must personally do so in writing. In all other respects, the licensee must complete the application and mail it to the designated office with the appropriate renewal fee. When the above procedure is followed, the license of a physician or podiatrist who has asserted the privilege shall be extended automatically until the Attorney General decides whether to compel answers. If the Attorney General decides to compel answers, it becomes the obligation of the Board to inform the licensee how much additional time the licensee has to submit the answers to questions 9(d), (e) and (g). Failure of a licensee to then answer those questions exposes the licensee to the penalties provided by law.

We find the remaining contentions raised by plaintiffs are clearly without merit. *R.* 2:11–3(e)(1)(E). The stay heretofore entered is hereby vacated. The matter is remanded to the Board for further proceedings consistent with this decision. We do not retain jurisdiction.

---

[2]We do not decide whether the statute confers transactional immunity. But see extensive discussions in *State v. Vinegra, supra,* 73 *N.J.* at 522–537, 376 *A.*2d 150 which was one year before *N.J.S.A.* 45:1–20 became effective. Compare *N.J.S.A.* 2A:81–17.2a2.