253 N.J. Super. 204 (1992)
601 A.2d 718
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK J. MARA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1991.
Decided January 8, 1992.
*207 Before Judges J.H. COLEMAN, BILDER and STERN.
Francis J. Gilbertson argued the cause for appellant (Keith, Winters & Wenning, attorneys; Francis J. Gilbertson of counsel; Lawrence R. Jones on the brief).
Simon Louis Rosenbach, Assistant Prosecutor, argued the respondent (Alan A. Rockoff, Prosecutor of Middlesex County, attorney; Simon Louis Rosenbach of counsel and on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
In a bench trial, defendant was convicted of second-degree aggravated assault, contrary to N.J.S.A. 2C:12-1b(1). Sitting as a Municipal Court judge, the same Law Division judge found defendant guilty under summons SPN 040759 charging him with driving while under the influence of alcohol (DWI), contrary to N.J.S.A. 39:4-50. For the aggravated assault, defendant was sentenced to a custodial term of eight years with four years of parole ineligibility. He was fined $1,000 and his driving privileges were suspended for two years, to begin when the custodial term has been served. On the DWI, defendant was sentenced to pay a fine of $250 and to attend a program at the Intoxicated Drivers Resource Center. His driving privileges were suspended for a concurrent six month period. Defendant was granted bail pending this appeal.
On this appeal, defendant contends that:
I THE TRIAL COURT ERRED IN ADMITTING PRIOR STATEMENTS OF THE DEFENDANT GIVEN BEFORE THE NEW JERSEY BOARD OF MEDICAL EXAMINERS ON APRIL 23, 1986, AND FEBRUARY 24, 1988, WHEREIN DEFENDANT WAS NOT ADVISED OF HIS RIGHT AGAINST SELF-INCRIMINATION AND DID NOT KNOWINGLY WAIVE SAME.
II THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE EXPERT TESTIMONY IN THE FORM OF AN OPINION AS TO THE DEFENDANT'S BLOOD ALCOHOL LEVEL AT THE TIME OF THE MOTOR VEHICLE ACCIDENT BY EXTRAPOLATING BACK FROM THE BREATHALYZER TEST.

*208 III THE LOWER COURTS VERDICT OF GUILTY AS TO THE SECOND DEGREE AGGRAVATED ASSAULT WAS ERRONEOUS AS SAME COULD NOT REASONABLY HAVE BEEN REACHED BASED UPON SUFFICIENT CREDIBLE EVIDENCE PRESENT IN THE RECORD.
IV THE TRIAL JUDGE'S SENTENCE TO THE DEFENDANT ON THE CHARGE OF AGGRAVATED ASSAULT WAS MANIFESTLY EXCESSIVE AND IMPROPER IN THAT IT CONSIDERED ELEMENTS OF THE OFFENSE ITSELF AS AGGRAVATING FACTORS, AND FAILED TO RECOGNIZE CERTAIN MITIGATING FACTORS, AND CONSIDERED INFORMATION IN THE PRESENTENCING REPORT CONCERNING DISMISSED AND/OR EXPUNGED CHARGES.
V THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT OF THE BOTH [sic] AGGRAVATED ASSAULT AND THE LESSOR [sic] INCLUDED OFFENSE OF DRUNK DRIVING WITHOUT MERGING SAME.

I
The trial judge sitting without a jury, found the following occurred. On February 16, 1985, the victim, German Soto, and members of his family were travelling southbound on the New Jersey Turnpike. Car trouble developed forcing them to stop at milepost 92.6. Soto, the driver, pulled onto the shoulder of the road, leaving about two feet between his car and the solid white line separating the travelled portion of the roadway from the shoulder or emergency lane. Soto activated the car's emergency lights as he and his brother exited the vehicle from the passenger door.
While Soto and his brother were checking the car's engine compartment at approximately 12:20 a.m., defendant suddenly struck the left rear corner of the Soto car and then sideswiped the entire left side with his red Camaro. At the same time, defendant struck Soto and the force of the impact hurled Soto approximately 60 feet. Soto sustained a skull fracture, cerebral concussion, bilateral sub-dural hematoma, a pneumothorax, multiple rib fractures on the left side, fractures of the fibula, tibia and medial malleolus. He was hospitalized from February 16, 1985 to April 13, 1985. It was stipulated that the injuries satisfied the requirement of serious bodily injuries as required by N.J.S.A. 2C:12-1b(1) and as defined in N.J.S.A. 2C:11-1b.
*209 The judge found that defendant was highly intoxicated at the time of the accident and that defendant made no attempt to avoid the accident. Defendant left the scene of the accident without even stopping or slowing down from the 55 to 60 miles per hour speed at which he was travelling. Following the accident, defendant travelled approximately three and one-half miles to Exit 11 on the Turnpike, the nearest exit. Very soon after exiting from the Turnpike and upon entering the Garden State Parkway, defendant was observed operating his vehicle in an erratic manner by two State Troopers. He was stopped by State Troopers Morelli and Stalling at approximately 12:30 a.m.
Prior to the stop, defendant veered over two lanes, almost hitting the State Troopers' vehicle. He was also observed arguing with his passenger, Mary Krisza. When asked for his driving credentials, defendant fumbled with his wallet. A strong odor of alcohol emanated from defendant's breath. He failed field sobriety tests administered to him. Fresh damage was observed to the right side of defendant's vehicle, but he denied any recent accident. Defendant was then arrested for DWI. A check with the Holmdel State Police Barracks did not reveal any report of an accident involving defendant's vehicle. The reason was the State Police responded to the scene of the Turnpike accident at approximately 12:30 a.m. and both the DWI and the accident investigations were occurring simultaneously.
Following defendant's arrest at Exit 11 for DWI, he was transported to the Holmdel State Police Barracks for booking and to have breathalyzer tests administered. However, before the booking or the breathalyzer testing could occur, the Holmdel Barracks received a communication from the State Police Barracks in New Brunswick reporting the hit and run accident on the Turnpike. Because Soto was obviously in critical condition, two State Troopers drove defendant and Mary Krisza back to Exit 11 where the Parkway and Turnpike intersect. Defendant and Krisza were turned over to State Troopers Beaver and Arce at Exit 11 at approximately 1:45 a.m. The two were then *210 transported to State Police Barracks in New Brunswick, a distance of approximately 10 miles from Exit 11.
At 2:06 a.m., defendant was Mirandized and he gave a statement admitting that, although he heard a noise, he did not stop because he did not think it was anything. The first of two breathalyzer tests was administered at 2:45 a.m. and a reading of.16 percent blood alcohol was obtained. The second test was performed at 3:05 a.m. and the reading was .15 percent blood alcohol.
For purposes of the aggravated assault charge, Charles G. Tindall, Jr. was permitted to give extrapolation evidence on behalf of the State. Cf. State v. Tischio, 107 N.J. 504, 506, 527 A.2d 388 (1987), app. dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988), and State v. Downie, 117 N.J. 450, 469, 569 A.2d 242, cert. denied, ___ U.S. ___, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990), prohibiting extrapolation evidence in a DWI prosecution. State v. Oriole, 243 N.J. Super. 688, 692, 581 A.2d 142 (Law Div. 1990), which we approve, permits extrapolation for purposes other than to prove DWI, where a drunk driver is also charged with aggravated assault through the use of an automobile. Tindall testified that at 12:20 a.m. defendant had a blood alcohol level of .18 or .19 percent. The extrapolation evidence was merely corroborative of what the two State Troopers detected through the use of their senses when defendant was stopped at Exit 11 within ten minutes after the hit and run accident.
At the time of the accident, defendant was a licensed doctor in this State. During the trial, the State introduced transcripts of statements given by defendant at hearings conducted by the Board of Medical Examiners (Board) on April 23, 1986, and February 24, 1988. Because alcohol was implicated in the hit and run accident, the Board was investigating whether defendant's license to practice medicine should be suspended.

*211 II
On this appeal, defendant argues that the transcripts of his testimony before the Board violated his Fifth Amendment rights. It is undisputed that the Board informed defendant each time that he had a right to have the assistance of counsel. Each time he elected to proceed without counsel. It is also undisputed that each appearance before the Board's committee was in connection with a disciplinary matter rather than a criminal matter and that defendant never asserted his Fifth Amendment privilege. The record does not reveal that he was threatened with any consequence for failing to appear before the Board. Cf. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).
It is now well established that the privilege against compelled self-incrimination is personal. The failure to assert the privilege, under the circumstances presented, results in a waiver. Maness v. Meyers, 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574, 588 (1975); State v. Toscano, 13 N.J. 418, 423, 100 A.2d 170 (1953); see also In re Addonizio, 53 N.J. 107, 248 A.2d 531 (1968). Warnings required by Miranda v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) do not apply to proceedings conducted before the Board or one of its committees. See also State v. Graves, 60 N.J. 441, 447, 291 A.2d 2 (1972). Beyond that, no custodial interrogation occurred before the Board or its Committee. Hence, we find defendant's contention that his Fifth Amendment rights were violated lacks merit.

III
There is another aspect, however, to whether the transcripts of defendant's testimony before the Board's Committee should have been used as evidence in the criminal trial. That aspect relates to immunity pursuant to N.J.S.A. 45:1-20 which has not been raised in this appeal. Under that statute, if a *212 physician appears before the Board voluntarily or otherwise and refuses to testify because the physician fears that testifying may tend to incriminate him or her, and the Attorney General directs the physician to testify, the physician is required to testify. But under the statute, once the Attorney General directs the physician to testify in the face of the asserted privilege, the statute automatically confers immunity precluding the use of that testimony in any criminal proceeding. Now we must decide whether there was immunity under the facts.
Defendant appeared before the Board's Committee on April 23, 1986, pursuant to a letter from the Board dated March 20, 1986. The letter informed defendant that the Board was investigating a matter which "relates to your responsibilities as a licensee of the Board.... You are therefore directed to appear before a Committee of the Board on Wednesday, April 23, 1986...."
A similar letter was sent to defendant on January 27, 1988. This letter directed defendant to appear before a Committee of the Board on Wednesday, February 24, 1988. The letter made clear that the investigation was not limited to the hit and run accident of February 16, 1985.
Defendant appeared before a Committee of the Board on April 23, 1986 and on February 24, 1988, as directed by the letters. On neither occasion, however, did defendant ever assert his Fifth Amendment right or object otherwise to giving testimony. Even though the two letters directed him to appear, defendant was nonetheless obligated under the statute to first assert his Fifth Amendment privilege as a precondition to immunity. Under the statute, a directive from the Attorney General to answer must be in response to the assertion of the privilege before immunity is triggered. See Hirsch v. New Jersey State Bd. of Med. Examiners, 252 N.J. Super. 596, 600 A.2d 493, 499 (App.Div. 1991). Since the preconditions of the statute were not satisfied, there is no immunity pursuant to *213 N.J.S.A. 45:1-20. See State v. Vinegra, 73 N.J. 484, 376 A.2d 150 (1977). The immunity provided by N.J.S.A. 45:1-20 is not self-executing. Because the preconditions to immunity were not met and the Fifth Amendment privilege against self-incrimination was not asserted, we conclude that the transcripts were properly admitted into evidence.
But even if they should not have been admitted, their admission constitutes harmless error. State v. Macon, 57 N.J. 325, 337-38, 273 A.2d 1 (1971). After all, this was a bench trial in which the judge found that defendant's statements before the Committee of the Board "were considered, but do not add much except for minimizing culpability for the events of that birthday night."
We have considered the contentions raised in Points II and III. We find that they are clearly without merit and no further comment is required. R. 2:11-3(e)(2). All of the factual findings and legal conclusions are supported by the record.

IV
As to Point V, we hold that the aggravated assault and the DWI charges do not merge. The DWI was not a lesser offense included in the aggravated assault charge. Unlike the DWI, intoxication was not an element of the assault. Evidence of the intoxication was utilized as part of the evidence to establish that defendant recklessly caused serious bodily injuries to Soto "under circumstances manifesting extreme indifference to the value of human life." N.J.S.A. 2C:12-1b(1).
A person who drives a motor vehicle while intoxicated, consciously disregards the risk of an accident and therefore acts with indifference to the value of human life when viewed in the context of all the surrounding circumstances. State v. Radziwil, 235 N.J. Super. 557, 563, 563 A.2d 856 (App.Div. 1989), aff'd, 121 N.J. 527, 582 A.2d 1003 (1990); State v. LaBrutto, 114 N.J. 187, 204, 553 A.2d 335 (1989). The fact that defendant did not attempt to slow down before the accident and that he did not *214 stop or attempt to obtain assistance for the victim indicate a total disregard for the value of human life. Based on the elements of the two offenses and the evidence presented to establish these elements, merger was not required. See State v. Cole, 120 N.J. 321, 327-328, 576 A.2d 864 (1990); State v. Miller, 108 N.J. 112, 118-119, 527 A.2d 1362 (1987).
Additionally, the DWI charge and conviction are based on defendant's condition at Exit 11 when he entered the Parkway rather than at the scene of the accident. We also find defendant's reliance on State v. DeLuca, 108 N.J. 98, 527 A.2d 1355 (1987), cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987) is misplaced. There, it was held that defendant, who had been acquitted for causing death by auto, could not be tried for DWI where intoxication was the sole basis for the causing death by auto charge. Here, intoxication was the sole basis for the DWI but not for the aggravated assault.

V
Finally, defendant contends that the sentence imposed is excessive and that the judge double counted aggravating factors. We disagree in part. When the judge considered the nature and the extent of Soto's injuries as an aggravating factor, he had reference to the gravity of the harm as manifested in the multiplicity of serious injuries inflicted upon Soto and the extent to which they are permanently disabling. Soto was unable to work and he walked with a decided limp at the time of sentencing. The judge found that the serious injuries were far in excess of that required to satisfy N.J.S.A. 2C:11-1b for a second-degree offense. The extent of the injuries, which exceed the statutory minimum for the offense, may be considered as aggravating. In other words, when one injury alone is life threatening, the fact that several other injuries were also life threatening permits a judge to consider those additional injuries as an aggravating factor without double counting.
*215 The judge considered the circumstances of the offense to be an aggravating factor because defendant deliberately became drunk on his birthday and then deliberately chose to drive on an express highway, committing one reckless act after another, such as leaving the scene without stopping or otherwise seeking medical assistance for Soto. He found that defendant's outrageous conduct was compounded by his refusal to respond to his passenger's pleas to stop. See State v. Radziwil, supra, 235 N.J. Super. at 575, 563 A.2d 856.
We are persuaded that it was improper to consider recklessness and conduct manifesting indifference to human life as an aggravating factor because they are elements of the aggravated assault. See State v. Jarbath, 114 N.J. 394, 404, 555 A.2d 559 (1989); State v. Gardner, 113 N.J. 510, 519, 551 A.2d 981 (1989); State v. Towey, 244 N.J. Super. 582, 593, 583 A.2d 352 (App.Div.), certif. denied, 122 N.J. 159, 584 A.2d 226 (1990). To this extent, the judge double counted. See State v. Link, 197 N.J. Super. 615, 620, 485 A.2d 1069 (App.Div. 1984), certif. denied, 101 N.J. 234, 501 A.2d 911 (1985).
An additional aggravating factor found was the substantial risk that defendant will commit another offense involving DWI because he was still denying he has problems with alcohol abuse. The fourth and final aggravating factor was the strong need to deter defendant and others from driving after drinking. We also find substantial support in the record for those two aggravating factors.
The judge found two mitigating factors: (1) the fact that defendant has attended some rehabilitation programs and (2) he has settled a civil liability suit with Soto for $455,000. The settlement papers reflect that defendant and Mary Krisza paid $100,000 towards the settlement. The judge found that he was clearly convinced that the aggravating factors substantially outweighed the mitigating factors.
When a judge has considered an improper aggravating factor in the weighing and balancing process, the weight *216 accorded such a factor materially alters the basis for the sentence. The double counting of a significant aggravating factor, skewed "the sentencing formula for weighing the aggravating and mitigating factors [and] derivatively impugned" the process to such an extent that a reconsideration of the sentence is required. State v. Jarbath, supra, 114 N.J. at 406, 555 A.2d 559. This is not an appropriate case for us to exercise original sentencing jurisdiction. Id. at 412, 555 A.2d 559.
We affirm the conviction and remand for resentencing. Defendant has been convicted of a second-degree offense for which the presumption of incarceration applies. N.J.S.A. 2C:44-1d. We direct that upon resentencing, his bail status be terminated. The remand shall be concluded on or before January 21, 1992. We retain jurisdiction.[1]
NOTES
[1] On the remand, defendant was resentenced to a custodial term of seven years without a period of parole ineligibility. We affirmed that sentence.