**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3577-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

URIAH HILL,

    Defendant-Appellant.

_____

Submitted May 9, 2017 — Decided September 19, 2017

Before Judges Rothstadt and Sumners.

On appeal from Superior Court of New Jersey,
Law Division, Burlington County, Indictment
No. 14-05-0453.

Joseph E. Krakora, Public Defender, attorney
for appellant (Theresa Y. Kyles, Assistant
Deputy Public Defender, of counsel and on the
brief).

Scott A. Coffina, Burlington County
Prosecutor, attorney for respondent (Jennifer
Paszkiewicz, Assistant Prosecutor, of
counsel; Boris Moczula, Legal Assistant, on
the brief).

The opinion of the court was delivered by

SUMNERS, J.A.D.

At the start of trial, the judge denied defendant's motion to suppress his video-recorded statement to the police and the audio recording of a 911 call. When the State did not produce the 911 caller to testify at trial, the trial judge denied defendant's request that the jury be allowed to draw an adverse inference due to her non-appearance. The jury subsequently found defendant guilty of the lesser-included offense of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), against his then girlfriend (the victim). The trial judge granted the State's motion for a discretionary extended term as a persistent offender, N.J.S.A. 2C:44-3(a), and imposed a sentence of seven years with three years of parole ineligibility.

Defendant raises the following arguments on appeal:

POINT I

DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BY THE TRIAL COURT'S RULING THAT DEFENDANT'S STATEMENT WOULD BE ADMISSIBLE IN SPITE OF THE FACT THAT HE WAS NOT GIVEN AN OPPORTUNITY TO DECLINE TO WAIVE HIS FIFTH AMENDMENT RIGHTS. U.S. CONST. Amend. V; N.J. CONST. [(1947),] Art. I, PARA. 1 and 10.

POINT II

THE ADMISSION OF THE DECLARATIONS MADE IN THE 911 TAPE BY THE NON-TESTIFYING WITHNESS [] VIOLATED CRAWFORD V. WASHINGTON [1] BECAUSE THE DECLARATION WAS TESTIMONIAL AND THE DEFENSE

---

[1] Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177, 194 (2004).

HAD NO PRIOR OPPORTUNITY TO CROSS-EXAMINE HER. U.S. CONST. Amends. VI, XIV; N.J. CONST. (1947), Art. I, PARAS. 1, 9 and 10

POINT III

THE TRIAL COURT'S DENIAL OF DEFENDANT'S REQUEST TO PROVIDE THE JURY WITH A CLAWANS[2] CHARGE ABOUT THE STATE'S FAILURE TO PRODUCE [THE 911 CALLER] DENIED THE DEFENDANT HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL. U.S. CONST. AMENDS. V, VI, AND XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9 AND 10. (RAISED BELOW).

POINT IV

THE EXTENDED TERM SENTENCE OF SEVEN YEARS, THREE WITHOUT PAROLE, FOR THIS THIRD-DEGREE AGGRAVATED ASSAULT IN THE MATTER IS EXCESSIVE.

Having considered defendant's arguments in light of the record and the applicable law, we affirm his conviction, but reverse and remand for resentencing.

I.

The trial record revealed the following. According to two eyewitness, a man punched a woman in the face and kicked her, as she lay unconscious on the ground next to a gas station pump. The third witness, who reported the assault to the police by calling 911, did not testify because the State could not locate her. In her recorded call played to the jury, she stated that she "just

---

[2] State v. Clawans, 38 N.J. 162 (1962).

witnessed a woman get the shit beat out of her [by a man]. . . . She's knocked unconscious[,]" and "he kicked her like 3 times[,]" then "walked off cussing."  She also commented that the woman was bleeding, crying, and upset.  Based upon the description of the assailant provided by the three witnesses, the police apprehended defendant a few hundred yards away from the gas station.  At the police station, defendant gave a video-recorded statement that was shown to the jury, in which he admitted hitting the victim, his then girlfriend.[3]  Also shown to the jury were video surveillance cameras' recordings depicting defendant's confrontation with the victim, and defendant kicking her after she fell to the ground. The victim did not testify, but photographs taken at the hospital showing her injuries were admitted into evidence.

## II.

We first address defendant's claim in Point I that his video-recorded statement taken at the police station was obtained in violation of his Miranda[4] rights, and that, following a pre-trial hearing, the trial judge erred in allowing its admission.

---

[3] A transcript of the interview was provided to the jury to follow during the playing of the video but was not admitted into evidence.

[4] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Prior to giving a statement, defendant was read his Miranda rights, which he said he understood.  Although defendant was not specifically asked if he was waiving his rights before he gave a statement, he confirmed his understanding of his rights by initialing, signing, and dating the Miranda card.  Defendant then proceeded to describe the events that led to his admission that he struck his girlfriend.  At the conclusion of his statement, he again acknowledged that he understood his Miranda rights and that he was not forced into making statements that he did not want to make.

The judge denied defendant's motion to suppress the statement based upon his review of the video recording and the transcript of the recording.  Looking at the totality of the circumstances and acknowledging that it was the State's burden to prove the statement's admissibility, the judge found "there is no reasonable doubt that would yield to the conclusion that this was nothing other than a knowing and voluntary waiver of Miranda rights."

We review a trial judge's factual findings in support of granting or denying a motion to suppress to determine whether "those findings are supported by sufficient credible evidence in the record."  State v. Gamble, 218 N.J. 412, 424 (2014).  Where the judge determines whether a defendant waived his right to remain silent based solely on a video-recorded statement or documentary

evidence, our Supreme Court recently held that we defer to a trial court's factual findings. State v. S.S., 229 N.J. 360, 374 (2017).

The Court in S.S. also addressed and reaffirmed this State's historical commitment to an individual's right against self-incrimination. "The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." Id. at 28 (quoting State v. Nyhammer, 197 N.J. 383, 399, cert. denied, 558 U.S. 831, 130 S. Ct. 65, 175 L. Ed. 2d 48 (2009)). Most importantly, the Court reaffirmed the standard that a reviewing court uses to determine if a defendant asserted his right against self-incrimination.

> Any words or conduct that reasonably appear to be inconsistent with defendant's willingness to discuss his case with the police are tantamount to an invocation of the privilege against self-incrimination. In those circumstances in which the suspect's statement is susceptible to two different meanings, the interrogating officer must cease questioning and "inquire of the suspect as to the correct interpretation." Unless the suspect makes clear that he is not invoking his right to remain silent, questioning may not resume. In other words, if the police are uncertain whether a suspect has invoked his right to remain silent, two alternatives are presented: (1) terminate the interrogation or (2) ask only those questions necessary to clarify whether the defendant intended to invoke his right to silence.

> To invoke the right to remain silent, a suspect does not have to follow a prescribed script or utter talismanic words. Suspects are mostly lay people unschooled in the law. They will often speak in plain language using simple words, not in the parlance of a constitutional scholar. So long as an interrogating officer can reasonably understand the meaning of a suspect's words, the suspect's request must be honored.
>
> [Id. at 29-30 (citations omitted).]

Here, the record supports the motion judge's finding that defendant was fully informed of his right to remain silent, waived that right, and was aware that he was being investigated for the assault in a domestic violence situation before he decided to cooperate with the investigation and provide self-incriminating information. Thus, defendant's Miranda rights were not violated.

Next, we turn to defendant's contention in Point II that admission of the 911 audio recording of the non-testifying caller violated his confrontation rights under Crawford. Defendant argues some of the 911 remarks were testimonial and were so intertwined with non-testimonial comments that he was denied the opportunity to challenge the testimonial comments because the caller did not testify.

We review the trial court's evidentiary rulings to determine whether there was a mistaken exercise of discretion. State v.

J.D., 211 N.J. 344, 354 (2012). Where a 911 call is admitted into evidence, we must consider the principles embodied in the Sixth Amendment's Confrontation Clause, which preclude the admission against a defendant of "[t]estimonial statements of witnesses absent from trial," unless "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford, supra, 541 U.S. at 59, 124 S. Ct. at 1369, 158 L. Ed. 2d at 197. "Testimonial" statements often include those made during structured police interrogation. Id. at 69, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203. Nonetheless:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
>
> [Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006).]

Generally, "at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." Id. at 827, 126 S.

A-3577-14T3

Ct. at 2276, 165 L. Ed. 2d at 240 (alterations in original). That is particularly so when "any reasonable listener would recognize [the 911 caller] was facing an ongoing emergency." Ibid. If, when viewed objectively, the nature of the colloquy between the 911 caller and the person called is such "that the elicited statements [are] necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past," the content of the call is not testimonial. Ibid.

We agree with the trial judge that the 911 caller was facing an ongoing emergency and that her statements were non-testimonial. As in Davis, the caller's sole purpose was to describe present facts requiring police assistance. Although the caller gave a graphic and colorful description of what she saw, nothing in the call suggests that it was her or the 911 operator's intent that the she was declaring what had happened in the past to preserve testimony for trial.

Similarly, we agree with the judge's finding that the 911 call was admissible under our evidence rules as a present sense impression or an excited utterance. A present sense impression is "[a] statement of observation, description or explanation of an event or condition made while or immediately after the declarant was perceiving the event or condition and without opportunity to deliberate or fabricate." N.J.R.E. 803(c)(1). An excited

utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate." N.J.R.E. 803(c)(2). The 911 statements satisfied the elements of both hearsay exceptions. We also note that these exceptions apply "[w]hether or not the declarant is available as a witness[.]" N.J.R.E. 803(c).

Furthermore, even if we concluded the 911 call was inadmissible, it would not cause us to reverse defendant's conviction. Reversal of a conviction is required only if there was error "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Daniels, 182 N.J. 80, 95 (2004) (alteration in original) (internal quotation omitted) (quoting State v. Macon, 57 N.J. 325, 336 (1971)); R. 2:10-2. Our review of the record convinces us that there was overwhelming evidence of defendant's guilt through the two eyewitnesses' testimony that they saw defendant strike and kick the victim, the surveillance videos depicting the confrontation and defendant's kick of the victim, photos of the victim's injury, and the defendant's admission that he argued with and then struck the victim. Thus, admission of the 911 call did not cause an unjust result.

In Point III, defendant further challenges the admission of the 911 call by contending that the judge erred in refusing to give a Clawans charge to allow the jury to draw an adverse inference from the State's failure to produce the testimony of the 911 caller. There is no merit to this contention.

In Clawans, our Supreme Court ruled that a party's failure to produce a witness at trial may give rise to an inference that the witness' testimony would have been unfavorable to that party. Clawans, supra, 38 N.J. at 170 (1962). A trial judge may provide an adverse inference charge after considering and making findings based on the following circumstances:

> (1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.
>
> [State v. Hill, 199 N.J. 545, 561 (2009) (alteration in original) (quoting State v. Hickman, 204 N.J. Super. 409, 414 (App. Div. 1985), certif. denied, 103 N.J. 495 (1986)).]

Here, none of these circumstances applies. There is no evidence that the caller was in the sole control of the State, or had a special relationship with the State. She was available to defendant if he wanted her to testify. Yet, given her observations, we find no basis to conclude that her testimony would have aided his defense. Considering the other strong evidence presented by the State, the caller's testimony was not essential to establish defendant's guilt.

Finally, we turn to defendant's contention in Point IV that we should remand for resentencing because the judge's application of aggravating factor number one, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense, including whether it was committed in an especially heinous, cruel, or depraved manner), was not supported by the facts. We agree.

We note that "[a]ppellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). Nevertheless, we do not affirm a sentence where "the aggravating factors . . . found by the sentencing court were not based upon competent and credible evidence in the record." State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). "When applying [factor one], 'the sentencing court reviews the severity of the defendant's crime, the single most important factor in the sentencing process,

assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public.'" Id. at 74. (quoting State v. Lawless, 214 N.J. 594, 609 (2013)). "[A] sentencing court may justify the application of aggravating factor one . . . by reference to the extraordinary brutality involved in an offense. . . . A sentencing court may consider 'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.'" Id. at 75 (alteration in original) (citations omitted) (quoting State v. Henry, 418 N.J. Super. 481, 493 (Law. Div. 2010)).

In applying aggravating factor one, the trial judge cited State v. Mara, 253 N.J. Super. 204 (1992), to find that defendant's kicking of the victim while she lay on the ground and left her there was in excess of the injury needed to sustain second-degree aggravated assault. However, we conclude that in this situation reliance on Mara was misplaced.

In Mara, defendant was convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and in a separate trial, of driving under the influence of alcohol, N.J.S.A. 39:4-50. Id. at 208. He struck the victim, who was on the side of the road with a disabled vehicle, causing serious bodily injury. Ibid. He did not stop or attempt to obtain assistance for the victim. Id. at 213-14. We affirmed the court's finding that aggravating factor

one applied where, in an aggravated assault case, "the serious injuries were far in excess of that required to satisfy" statutory elements. Id. at 214.[5]

Here, the facts do not warrant application of aggravating factor one. The defendant's act of kicking the victim was not far in excess of what was necessary to satisfy second-degree aggravated assault. There is no evidence that the kicking caused any injury to the victim. Hence, we remand the matter to the trial judge to re-sentence defendant without consideration of this factor. We do not express any opinion as to the appropriate sentence.

Affirmed in part; reversed in part and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] We did, however, remand for resentencing because the trial court double counted elements of aggravated assault by considering aggravating factors recklessness and conduct manifesting indifference to human life. Mara, supra, 253 N.J. Super. at 215.

A-3577-14T3