IN THE MATTER OF FAIR LAWN EDUCATION ASSOCIATION, CHARGED WITH CONTEMPT OF COURT.

Argued February 5, 1973—Decided May 21, 1973.

*Mr. Abraham L. Friedman* argued the cause for appellant Fair Lawn Education Association (*Mr. Emil Oxfeld,* of counsel; *Messrs. Rothbard, Harris and Oxfeld,* attorneys).

*Mr. Alfred J. Luciani,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

WEINTRAUB, C. J. ▮ This is a contempt proceeding arising out of an illegal strike of school teachers employed in Fair Lawn. The strike was continued in violation of an

injunction and was still in process when these proceedings were instituted. Fourteen individuals and Fair Lawn Education Association (herein Association), a nonprofit corporation which represented the teachers in that school district, were convicted of contempt consisting of violations of the injunction. The convictions were affirmed by the Appellate Division. We granted the Association's petition for certification, 60 *N. J.* 500 (1972), to consider whether a fine was lawfully imposed upon it in the sum of $17,350 notwithstanding that a demand for trial by jury had been overruled. At the time of the strike, 347 teachers in the Fair Lawn system were dues-paying members of the Association. The fine thus amounts to $50 per member.[1]

It would not be fruitful to explore the subject of summary trials at common law. The history is not the clearest. As to the contempt process, the history in our country is definitive and sufficient for this case.

The principles which have emerged may be summarized. All contempts of court are penal offenses and may be prosecuted like other offenses. Some, however, may be prosecuted summarily, that is, without indictment or trial by jury. The offenses thus triable summarily consist of misbehavior in the actual presence of the court, misbehavior of an officer of the court in his official transactions, and violation of an order of the court. These categories were established in 1831 by an act of Congress, now 18 *U. S. C. A.* §§ 401, 402, and in our State in 1917 by a statute, now *N. J. S. A.* 2A:10–1. New Jersey Department of Health v. Roselle, 34 *N. J.* 331, 340–342 (1961); *In re Buehrer,* 50 *N. J.* 501, 513–516 (1967).

The sole credible basis for the summary contempt process is necessity, a need that the assigned role of the

---

[1]The individual defendants were each sentenced to six months' imprisonment, one month to be served in custody and the balance suspended. Each was fined $400 and placed on probation for one year commencing upon release from jail.

judiciary be not frustrated. But since the summary contempt process lends itself to arbitrary action, the power has been increasingly circumscribed, and this in two ways. One is by the careful recourse to the reason for the summary power, *i. e.*, the need for it, to the end that a summary power be not invoked beyond that need. Indeed the statutory categories referred to above evolved out of a grand debate with respect to that underlying necessity. The other safeguard against the risk of arbitrariness consists of procedural requirements designed as antidotes for that risk.

With respect to procedural antidotes, our practice in contempt matters is calculated to limit the risk of arbitrariness and the appearance of arbitrariness. So, for example, when the charge is a violation of a court order, the penal proceeding may not be heard by the judge whose order was allegedly contemned unless the defendant consents to his sitting. *R.* 1:10–4. Thereby obviated is the risk which inhered singularly in the contempt area when the offended judge sat in judgment of his own charge. For further assurance, *R.* 2:10–4 provides that a summary conviction for contempt shall be reviewable on the facts as well as the law and thus affords a scope of review not available when guilt has been found by a jury. And our rule forbids a single proceeding both to punish for contempt and to give relief to the litigant injured by the contumacious act or omission, unless the defendant consents to that course. The punitive proceeding, which the court alone may initiate, must be plainly marked so that the defendant will know that the aim is to punish him. *R.* 1:10–2, 4, 5. See *New Jersey Department of Health v. Roselle, supra,* 34 *N. J.* at 342–344; *In re Buehrer, supra,* 50 *N. J.* at 515–516. The rules governing criminal trials apply fully, save only indictment and trial by jury.

As we have said, the summary power rests upon necessity. With respect to court orders, the subject matter before us, the court must be able to compel immediate compliance if the court is to be equal to its responsibility under govern-

ment. Therein lies the critical difference between a violation of a court order and a violation of some penal statute. A court order is not intended merely to restate some underlying duty or obligation, civil or criminal. Rather, a court order reflects an underlying wrong already done or threatened, coupled with an urgency or some inadequacy in the ordinary remedy which mandates a coercive remedy. So, here, the subject matter was a strike by public employees in the face of the settled rule that such strikes are illegal. *Board of Education, Borough of Union Beach v. New Jersey Education Association*, 53 *N. J.* 29, 36–37 (1968). The Board of Education obtained a restraining order to end this public wrong, but the strike continued in defiance of the order. The power must be the court's to end the public wrong by a procedure which, while not impairing the truth-finding process, will not deny relief by a delay in affording it.

We heretofore considered whether it would be compatible with the necessity underlying the summary contempt power to place a limit upon the punishment which may be imposed upon an individual who disobeys an injunctive order. More precisely we asked whether it would be adequate to hold the consequences within those which ensue upon conviction for a "petty offense" as opposed to conviction for "crime." We concluded the underlying need could be met upon that basis. More precisely, we held the maximum jail term which may be imposed upon a summary trial is six months, and that a summary conviction for contempt would not entail the other consequences which flow from a conviction for "crime." *In re Buehrer, supra,* 50 *N. J.* at 517–522.

We stress that in *Buehrer* we were concerned with an individual and not with a corporate offender, and the central question was whether a six-month *jail* term would be adequate to satisfy the overriding necessity that a court order be obeyed at once. In concluding that it would suffice, we surveyed the jail sentences theretofore imposed in contempt matters and were satisfied the history of the subject supported the limitation we imposed. *In re Buehrer, supra,* 50

*N. J.* at 519–520. At that time, our "disorderly persons offense" carried a maximum jail term of one year; it has since been lowered to six months. *N. J. S. A.* 2A:169–4.

Later it was held in *Bloom v. Illinois,* 391 *U. S.* 194, 88 S. Ct. 1477, 20 *L. Ed.* 2d 522 (1968), that a two-year term could not be imposed in a summary trial for contempt. The Court did not decide what was the maximum tolerable when the contempt process is summary. We might add that the contempt in *Bloom* did not present the element of urgency involved when an injunctive order is disobeyed. In *Bloom* the contempt consisted of the offer of a fraudulent will for probate. In any event, in deciding whether the jail term there imposed was incompatible with a summary proceeding, *Bloom,* as did *Buehrer,* recurred to the ultimate touchstone —necessity, and finding a lesser jail sentence would do, held a two-year sentence was excessive.

Here the offender is an artificial entity. The question is whether a corporation, which of course cannot be jailed, may insist its contempt is not punishable beyond some nominal fine unless the issue of its guilt is decided by a jury. The question is not whether a corporation charged with a *statutory* offense is entitled to the jury process. The subject here is a willful disobedience of an order of the court, and the critical question is whether such a monetary limitation upon trial without a jury would be compatible with the elementary need that the orders of the judiciary be obeyed and be obeyed at once if the underlying wrong which led to the order is to be ended.

It must be remembered that there is no universal right to a jury merely because of the risk of a dollar judgment. So far as money is concerned, judges in equity have always decided issues of civil liability, no matter how large the claim, without the aid of a jury. Indeed, with respect to violations of orders of a court of equity, such as the one here involved, it is clear the Constitution does not entitle a defendant to a jury when the litigant injured by the violation seeks dollar recompense. Thus we are asked to say that

a judge who can decide the issue of breach when a litigant seeks relief for the violation is not a suitable finder of the facts if the imposition of the dollar liability has a punitive aim.

Certainly prior to *Bloom* it was not doubted that a corporate contemnor could be punished by a fine in an amount commensurate with the wrong upon a finding of guilt made without a jury. We may start with the celebrated case of *United States v. United Mine Workers of America,* 330 *U. S.* 258, 67 S. Ct. 677, 91 *L. Ed.* 884 (1947). There a fine of $10,000 was imposed upon the defendant Lewis and a fine of $3,500,000 upon the defendant Union, for violating a court order enjoining a strike. The Court held there was no right to a jury trial. The fine upon Lewis was upheld. As to the Union, the majority concluded that $700,000 should be imposed unconditionally with respect to the wrong done, with the balance of $2,800,000 of the fine made "conditional on the defendant's failure to purge itself within a reasonable time." The Court commented that (330 *U. S.* at 303, 67 S. Ct. at 701, 91 *L. Ed.* at 918):

"In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future. Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge."

It added (330 *U. S.* at 304, 67 S. Ct. at 701, 91 *L. Ed.* at 918):

"But where the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.

It is a corollary of the above principles that a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future

compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant."

Prior to *Bloom*, it was held in *Cheff v. Schnackenberg*, 384 *U. S.* 373, 86 S. Ct. 1523, 16 *L. Ed.* 2d 629 (1966), that a six-month jail sentence imposed upon an individual adjudged guilty of contempt without trial by jury was valid. The Court announced that a six-month term would be the maximum it would thereafter permit in a summary contempt proceeding. It so ruled in an exercise of its supervisory power rather than in response to a constitutional mandate. In reaching that conclusion the Court noted that a "petty offense" was punishable by six months' imprisonment and a fine of $500. 18 *U. S. C. A.* § 1. We refer to *Cheff*, not for its immediate holding, but rather to contrast the Court's handling of the individual with its handling of the corporate defendant in the contempt proceedings. Although it granted *certiorari* to review a six-month jail sentence imposed on Cheff, the Court denied the petition of the corporate defendant, Holland Furnace, notwithstanding that the fine imposed upon it was $100,000. 384 *U. S.* at 375, 86 S. Ct. at 1523, 16 *L. Ed.* 2d at 631. The significance of course is that while granting *certiorari* as to Cheff to decide whether a jail term in excess of the six months' limit upon a petty offense fixed by 18 *U. S. C. A.* § 1 could be imposed without a jury trial, the Court was not moved by the petition of the corporation even though it was subjected to a fine vastly in excess of the $500 maximum of that statute.

In no case has the United States Supreme Court held that exposure to a fine would alone raise a jury issue in a contempt proceeding. The speculation that some monetary limit might apply stems from a statement in *Duncan v. Louisiana*, 391 *U. S.* 145, 88 S. Ct. 1444, 20 *L. Ed.* 2d 491 (1968), which case did not involve a contempt charge. There it was held that an authorized statutory maximum of two years made the crime a "serious" one requiring trial by

jury. The Court said, 391 *U. S.* at 161, 88 S. Ct. at 1453, 20 *L. Ed.* 2d at 503:

> "In determining whether the length of the authorized prison term *or the seriousness of other punishment* is enough in itself to require a jury trial, we are counseled by *District of Columbia v. Clawans. supra,* [300 U. S. 617, 57 S. Ct. 660, 81 L. Ed. 843], to refer to objective criteria, chiefly the existing laws and practices in the Nation."

It is the words we have italicized, "or the seriousness of other punishment," which are argued to import some monetary figure separating the "serious" from the "petty" offense. We cannot be sure what other "punishments" were intended in *Duncan.* Perhaps loss of office or some comparable consequence was in mind, or perhaps the Court made the reservation simply because it could not be sure whether something other than a substantial jail sentence could later assume such proportions. Nothing in *Duncan* suggests that the amount of a fine would be pivotal. In any event, as we have said, *Duncan* did not involve a contempt charge and thus the Court did not have the relevant question, whether a corporate contemnor must be accorded a jury trial if the fine exceeds a limit applicable to a statutory offense. We cannot assume *Duncan* intended silently to overrule *United Mine Workers.* We are satisfied such a limitation would deny the judiciary the capacity to deal with continued defiance by corporate offenders.

The Association relies upon *United States v. R. L. Polk & Co.,* 438 *F.* 2d 377 (6 Cir. 1971). A consent decree had been entered in 1955. In 1965 the government instituted "civil" and also "criminal" contempt proceedings. In 1969, after *Duncan* was decided, the trial court imposed a fine of $35,000 upon this corporate defendant. The defendant then argued that the fine could not exceed $500, the maximum authorized by the federal statute for a "petty offense." As we understand *Polk,* the Court seized upon the reference in *Duncan, supra,* "to the objective criteria found in the ex-

isting laws of the Nation," and since under 18 *U. S. C. A.* § 1, "petty offenses" carried a maximum of six months and $500, *Polk* concluded that a fine in excess of $500 established the offense as "serious" and therefore worthy of jury trial. The difficulty with that exposition is the assumption that the liability of a corporation for contempt may be equated with the liability of a corporation for statutory offenses. In the case of a statutory offense, the Legislature has fixed the maximum. But as to contempt, with respect to which there is no statutory maximum, the court must face the question whether the judicial power will be set at naught by that monetary limit upon a summary trial.

We repeat that the question is not what ought to be done when a corporation transgresses a statute. The question is what may be done when, as here, a corporation persists in defying the judicial process. We must return to the principle of necessity upon which the summary power rests and depends. The right to jury trial yields to that necessity. The issue is whether a right to a jury can be reconciled with the paramount demand that the court's process be obeyed forthwith. One need but reflect upon how weakened would have been the injunctive order in *United Mine Workers* if a fine in excess of $500 could not have been imposed absolutely or conditionally until after the issue of breach had been decided by a jury (with or without indictment by a grand jury[2]). Necessity, the ultimate test in this controversy, counsels that there be no artificial monetary limitation upon the summary process when an injunction is defied.

---

[2]If a fine beyond the suggested limit makes the offense a "serious" crime entitling a corporation to trial by jury, it is not evident that a corporation could be denied the right to action by a grand jury either under *Art.* I, ¶ 8, of the State Constitution or perhaps also under the Fifth Amendment to the Federal Constitution guaranteeing grand jury action with respect to an "infamous" crime. If grand jury action, too, were accorded, the efficacy of a court order would be further impaired.

*Polk* was followed but without discussion in *County of McLean v. Kickapoo Creek, Inc.*, 51 *Ill.* 2d 353, 282 *N. E.* 2d 720 (Sup. Ct. 1972), where the fine of the corporate defendant "exceeded $500." On the other hand, the Supreme Court of Mississippi found *Polk* to be unpersuasive. *McGowan v. State, Miss.*, 258 *So.* 2d 801 (1972), *cert.* denied, 409 *U. S.* 1006, 93 S. Ct. 430, 34 *L. Ed.* 2d 298 (1972). Our Appellate Division also rejected the approach which *Polk* accepted. *In re Jersey City Education Association*, 115 *N. J. Super.* 42 (1971), certif. denied, 58 *N. J.* 603 (1971), *cert.* denied, 404 *U. S.* 948, 92 S. Ct. 268, 30 *L. Ed.* 2d 265 (1971). There the Appellate Division correctly held that in the cases in which individuals were defendants, jury trial was accorded only because liberty was involved. As we pointed out in *Buehrer, supra,* 50 *N. J.* at 519–520, a jail term of six months was enough to insure compliance with a court order, and for that reason the summary process could support no greater deprivation of liberty. But the dollar limitation which conventionally attends a violation of a *statute* would be wholly inadequate when the order of a court is defied.

Our Appellate Division in the case just cited referred to *Rankin v. Shanker*, 23 *N. Y.* 2d 111, 295 *N. Y. S.* 2d 625, 242 *N. E.* 2d 802 (Ct. App. 1968). Involved were violations of an injunction against a strike by public employees. *Rankin* was decided after *Duncan* and *Bloom*. It was argued that under *Bloom* the offense was a "serious" crime calling for a jury trial. In rejecting that claim, the majority said (295 *N. Y. S.* 2d at 632, 242 *N. E.* 2d at 807–808) :

"Nor does the penalty to which defendant unions are subject — a fine of $10,000 a day or one fifty second (1/52) of the total amount of annual membership dues, 'whichever is the lesser' (Judiciary Law, § 751, subd. 2, Par. [a]) — render the contempt a 'serious' crime. The determination, whether it is serious or petty under the decisions, turns not on the amount of the fine which may be imposed but solely on the length of the prison sentence. * * * Consequently, as the cases reveal, the fine, even though sizeable in amount, furnishes no valid criterion for the defendants' claim that the contempt charged against

them constitutes a serious crime. Further, even if the amount of the permissible fine had any relevance, the fine — which in the last analysis must be borne by the union membership (see, e. g., Martin v. Curran, 303 N. Y. 276, 281, 101 N. E. 2d 683, 686) — is actually small, amounting, at most, to no more than a member's weekly union dues for each day of the contempt."

We think it appropriate to say that in the case before us the fine amounts to but $50 per member, and hence the impact upon the underlying membership is modest in the light of the public wrong. Although the impact per member is not decisive, it helps to put the constitutional issue in perspective.

We agree that the fine was appropriate. The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judges CONFORD and LEWIS—6.

*For reversal*—None.