689 A.2d 784

JAMES CONSTRUCTION COMPANY, PLAINTIFF–APPELLANT, v. BOARD OF PUBLIC UTILITIES, STATE OF NEW JERSEY, DEFENDANT–RESPONDENT, AND JOSEPH L. MUSCARELLE, INC., J.L.M. PHOENIX CONSTRUCTION CORPORATION AND LINDE GRIFFITH CONSTRUCTION COMPANY, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 22, 1997—Decided March 6, 1997.

358

Before Judges PRESSLER, STERN and WECKER.

*Michael A. Sicola* argued the cause for appellant (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski*, attorneys; *Richard E. Arvidson*, and *Mr. Sicola*, of counsel and on the brief; *Mr. Sicola*, on the reply letter brief).

*Charles F. Kenny* argued the cause for appellants Joseph L. Muscarelle, Inc. and J.L.M. Phoenix Construction Corporation

*(Peckar & Abramson,* attorneys; *Mr. Kenny* and *Linda A. Turtel-taub,* on the brief and reply brief).

*Gary S. Kull* argued the cause for appellant Linde–Griffith Construction Company *(McElroy, Deutsch & Mulvaney,* attorneys).

*Regina H. Nugent,* Deputy Attorney General, argued the cause for respondent Board of Public Utilities *(Peter Verniero,* Attorney General, attorney; *Jeffrey C. Burstein,* Deputy Attorney General, of counsel; *Ms. Nugent,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Plaintiff and defendant construction companies appeal from the dismissal of a complaint challenging the constitutionality of the Underground Facility Protection Act (UFPA or Act), *N.J.S.A.* 48:2–73 to –91, claiming that the Act is unconstitutional both facially and as applied, that the actions taken by the Board of Public Utilities (BPU or Board) thereunder were unconstitutional, and that the subjects ruled upon by the trial judge "exceeded the scope of relief sought by defendants" thereby potentially foreclosing plaintiffs "from litigating certain issues in administrative courts." Specifically, the construction companies assert the legal issues raised should be resolved without the need for exhaustion of administrative remedies, that the UFPA creates "its own procedure to indict violators," that "[t]he Legislature cannot constitutionally pass a statute which allows for the imposition of criminal penalties without affording the constitutional requirements of an indictment and trial by jury," and that the Order to Show Cause issued to them presumed they "are guilty unless otherwise proved," thereby unconstitutionally requiring them "to prove their innocence in order to prevent the imposition of penalties." They also assert that penalties cannot be assessed by the Board under the UFPA.

According to the Law Division complaint, which is not contested in any material respect, on January 9, 1995, during the course of construction activities at property leased by Hertz Corporation at Newark Airport, "there occurred an interruption of electric power provided to the Airport through underground electric facilities operated by Public Service Electric & Gas Company ('PSE & G'). The Airport remained without electrical power for a period of approximately twenty-four hours." The construction companies were working at the site.

Shortly thereafter, the Board commenced an investigation regarding "any and all activities related to that event [including] all activities related to damage to an underground telecommunication facility on the Site" which it learned occurred on or about December 5, 1994. An "Order of Investigation" was issued on February 8, 1995 and served upon plaintiff, James, and two of the defendant contractors, Joseph L. Muscarelle and Linde–Griffith Construction Company, advising that the BPU was going to investigate their possible violations of the UFPA.

UFPA established a "One–Call Damage Prevention System" for the protection of underground facilities, including those carrying water, sewage, telecommunications signals, cable television, oil and electricity, which are often subject to accidental damage from excavating equipment and explosives. *N.J.S.A.* 48:2–74, –76. UFPA requires excavators to notify the One–Call System prior to excavation, requires that excavators use reasonable care and supervision when working so as to avoid damaging underground facilities, and requires public utilities to mark the location of their underground facilities when they receive notice from the One–Call System of a planned excavation nearby to a facility. *N.J.S.A.* 48:2–80 to –82.

The BPU thus commenced an investigation of whether any one or more of the three contractors had failed to notify the One–Call System prior to excavating at the airport site and whether any of them violated UFPA in their operation of their heavy equipment. The BPU also investigated whether PSE & G "marked, staked,

located, or otherwise provided the position of its underground facilities in accordance with the requirements of the Act...."

On February 22, 1995, the Board issued a "Prehearing Order," informing plaintiff, the two defendant contractors and PSE & G, among other things, that a prehearing conference would be conducted on February 10, 1995, "that investigatory hearings would be conducted ... on February 22, 23 and 24, 1995," that "[e]ach witness [either designated or approved by staff] may be accompanied by counsel," and that counsel "may submit proposed questions to be asked of the witness."

Having completed its investigation, on July 21, 1995, the Board issued an "Order of Investigation and Order to Show Cause" alleging that James, Muscarelle, and Linde–Griffith violated UFPA by failing to notify the One–Call System prior to the excavations that damaged the Bell Atlantic and the PSE & G facilities, *N.J.S.A.* 48:2–82a; by failing to preserve after excavation the markings designating the underground facilities, *N.J.S.A.* 48:2–82d(4); by failing to plan the excavations and use reasonable care during the excavations so as to avoid damaging the underground facilities, *N.J.S.A.* 48:2–82d(2),(3), and by failing to report the damage to the facilities after it occurred, *N.J.S.A.* 48:2–82e. No violations were alleged against PSE & G.

The Order to Show Cause was made returnable before an Administrative Law Judge for determination as to "[w]hy the Board should not invoke civil penalties and other relief against ... Muscarelle, Linde–Griffith, and James" under *N.J.S.A.* 48:2–86, 48:2–88 "and such other sections of *Title* 48 of the *Revised Statutes of New Jersey* as may be applicable," together with costs of the investigation and proceedings. The cited sections deal with "civil penalties" and injunctions.[1] The hearings have been scheduled to commence this spring.

---

[1] One provision of UFPA, not cited in the Order, provides for a third degree crime. Thereunder, UFPA violations resulting in death, serious bodily injury, damage to underground facilities in excess of $50,000, or the release of more

Plaintiff filed its complaint in lieu of prerogative writs in the Law Division in September 1995. The construction company defendants, by cross-claims, joined plaintiff's demand for, among other relief, a declaration that UFPA is unconstitutional, that the BPU was acting arbitrarily and in violation of the Act, and for a judgment dismissing the Order to Show Cause.

In dismissing the complaint and cross-claims, Judge Reginald Stanton appended the following "Statement of Reasons" to his order of January 22, 1996:

The claims under 42 U.S.C.A. § 1983 are dismissed with prejudice because they are patently without merit. Tort claims are dismissed with prejudice because they are barred by *N.J.S.A.* 59:2–3(a) and (b).

The *Underground Facility Protection Act, N.J.S.A.* 48:2–73, et seq., is facially constitutional. The Board of Public Utilities is conducting proceedings under the act in a manner which appears to be consistent with the act and with the procedural requirements of the *Administrative Procedure Act, N.J.S.A.* 52:14B–10. Plaintiff and the contract defendants may raise procedural objections in the administrative proceedings scheduled in the Office of Administrative Law and may also present a full range of factual defenses there. Although bare linguistic analysis of the Order issued by the Board on July 21, 1995 might seem to shift the burden of proof inappropriately, the basic legal reality is that orders to show cause are not to be read literally in regard to burden of proof, and the burden of proof in the administrative proceedings lies with the Board.

There is no reason to anticipate that proceedings before the Office of Administrative Law will not be fair or that they will not meet all due process requirements. When the Board of Public Utilities has rendered its final decision, judicial review of all factual and legal questions will be available in the Appellate Division of the Superior Court.

 We affirm the denial of relief substantially for the reasons expressed by Judge Stanton with respect to the issues he addressed. We add the following as a result of the issues presented to us.

 The construction companies argue that UFPA is unconstitutional, both facially and as applied, because "the New Jersey

---

than fifty barrels from an "underground hazardous liquid pipeline facility" are made third-degree crimes. *N.J.S.A.* 48:2–87. This matter was not referred to the Attorney General for prosecution under that section or to a county prosecutor.

Legislature has created its own procedure to indict violators" and has enacted "a statute which allows for the imposition of criminal penalties without affording the constitutional requirements of an indictment and trial by jury," *N.J. Const.* art. I, ¶¶ 1, 8, 9 and 10, *U.S. Const.* amend. V, VI, XIV. They also contend that by allowing criminal trials in administrative courts, UFPA violates the separation of powers doctrine. *N.J. Const.* art. III, ¶ 1.

■ We must "afford every possible presumption in favor of an act of the Legislature" and will declare a statute unconstitutional only if it is "clearly repugnant to the constitution" and not subject to any saving interpretation. *Secaucus v. Hudson County Bd. of Taxation,* 133 *N.J.* 482, 492, 628 *A.*2d 288 (1993), *cert. denied,* 510 *U.S.* 1110, 114 *S.Ct.* 1050, 127 *L.Ed.*2d 372 (1994); *Newark Superior Officers Ass'n v. City of Newark,* 98 *N.J.* 212, 222–23, 486 *A.*2d 305 (1985).

The construction companies' contentions addressed to the statute's constitutionality are without merit. The Board's investigation and the scheduled hearings in the OAL are not part of a criminal proceeding and criminal sanctions cannot flow therefrom. *N.J.S.A.* 48:2–86 and –88 provide for "civil" penalties, and the Board must "petition the Attorney General to bring a criminal action" under *N.J.S.A.* 48:2–87 if criminal sanctions are to be sought. *See* Assembly Transportation and Communications Committee Statement, *N.J.S.A.* 48:2–73 (Supp.1996). As a result of such petition, a grand jury investigation can be commenced or a criminal complaint filed. In the absence of same, no custodial sentence can be imposed and this matter simply does not involve a "criminal prosecution," *see U.S. Const.* amend VI; *N.J. Const.* art. I, ¶ 10; prosecution of a "crime," *see U.S. Const.* amend. V, or a "criminal offense." *N.J. Const.* art. I, ¶ 8; *see also Baldwin v. New York,* 399 *U.S.* 66, 90 *S.Ct.* 1886, 26 *L.Ed.*2d 437 (1970); *Duncan v. Louisiana,* 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968); *In re Fair Lawn Ed. Ass'n,* 63 *N.J.* 112, 119–22, 305 *A.*2d

72 (1973) (right to a jury trial)[2]; *State v. Senno,* 79 *N.J.* 216, 223, 398 *A*.2d 873 (1979); *In re Presentment by Camden County Grand Jury,* 10 *N.J.* 23, 40–67, 89 *A*.2d 416 (1952) (regarding scope of right to indictment in New Jersey); *cf. Alexander v. Louisiana,* 405 *U.S.* 625, 633, 92 *S.Ct.* 1221, 1226, 31 *L.Ed*.2d 536, 543 (1972) (no federal right to State grand jury indictment);[3] *N.J.S.A.* 2C:1–4, –5 (defining crimes and offenses).

That is not to say that an individual witness cannot assert his or her Fifth Amendment rights in an administrative proceeding. *See, e.g., Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation of the City of N.Y.,* 392 *U.S.* 280, 88 *S.Ct.* 1917, 20 *L.Ed*.2d 1089 (1968); *Spevack v. Klein,* 385 *U.S.* 511, 87 *S.Ct.* 625, 17 *L.Ed*.2d 574 (1967); *State v. Mara,* 253 *N.J.Super.* 204, 211–12, 601 *A*.2d 718 (App.Div.1992) (State Medical Board's administrative investigation of a doctor was not a custodial interrogation so that *Miranda* warnings were not required, and that the failure of a witness to assert the Fifth Amendment constitutes a waiver of the privilege against self-incrimination); *Hirsch v. New Jersey State Bd. of Medical Examiners,* 252 *N.J.Super.* 596, 607–09, 600 *A*.2d 493 (App.Div.1991), *aff'd,* 128 *N.J.* 160, 607 *A*.2d 986 (1992).[4]

---

[2] While the construction companies argue that "[t]he Board must be prevented from proceeding in the OAL, and must be required to seek any civil penalties by filing an action in Superior Court as the One–Call Act provides," there is no contention that "civil penalties" imposed by an administrative agency in the amount authorized by UFPA by themselves give rise to a jury trial, and no penalties have yet been imposed.

[3] "Our Supreme Court has never doubted [even] the power of a grand jury to make a presentment of matters of public concern unaccompanied by indictments." *In re Essex County Grand Jury,* 110 *N.J.Super.* 24, 29, 264 *A*.2d 253 (App.Div.), *certif. denied,* 56 *N.J.* 473, 267 *A*.2d 55 (1970).

[4] As the issue has not been raised, and as no witness has asserted the privilege due to fear of possible incrimination in a subsequent criminal prosecution, we need not address how a claim of privilege may be tested in an administrative proceeding such as this, and whether a witness can be compelled to testify over a valid claim of privilege or the consequences of such an order. *See, e.g., Hirsch,*

■ Accordingly, as no criminal proceeding is involved, and there is no "administrative determination of guilt or innocence," the separation of powers doctrine is not violated. *See David v. Vesta Co.,* 45 *N.J.* 301, 326–27, 212 *A.*2d 345 (1965).

The Board has the authority both to investigate UFPA violations and to assess civil penalties thereof. The Legislature has expressly provided that the Board "is the appropriate State agency to designate the operator of, and provide policy oversight to, the One–Call Damage Prevention System and enforce the provisions of this act." *N.J.S.A.* 48:2–74. When the Board learns of a possible UFPA violation, it may issue an order specifying the violator and the violation, ordering abatement, and "giving notice to the person of his right to a hearing on the matters contained in the order." *N.J.S.A.* 48:2–86a. Moreover, *N.J.S.A.* 48:2–86c specifically provides:

> Any civil penalty imposed pursuant to this subsection may be compromised by the board. *In determining the amount of the penalty,* or the amount agreed upon in compromise, *the board shall consider* the nature, circumstances, and gravity of the violation; the degree of the violator's culpability; any history of prior violations; the prospective effect of the penalty on the ability of the violator to conduct business; any good faith effort on the part of the violator in attempting to achieve compliance; the violator's ability to pay the penalty; and other factors the board determines to be appropriate.

> • • • • • • • •

> The Superior Court shall have jurisdiction to enforce the provisions of "the penalty enforcement law" in connection with this act.
>
> [*N.J.S.A.* 48:2–86c (emphasis added).]

*See also N.J.S.A.* 48:2–88b (permitting the Board to commence a "civil action" to prevent a violation of the UFPA or any order entered thereunder, or to collect a "civil remedy").

■ It is thus clear that the Board may undertake administrative proceedings and assess civil penalties for violations, enforcement of which must occur in the Superior Court pursuant to the Penalty Enforcement Act, *N.J.S.A.* 2A:58–1 *et seq.* That is not to

---

*supra,* 252 *N.J.Super.* at 607–09, 600 *A.*2d 493; *Mara, supra,* 253 *N.J.Super.* at 212–13, 601 *A.*2d 718.

say, however, that such enforcement can precede our review, on direct appeal, of the final administrative determination of the Board, be it legal or factual. *See N.J.S.A.* 48:2–43; *R.* 2:2–3(a)(2); *Pascucci v. Vagott,* 71 *N.J.* 40, 54, 362 *A.*2d 566 (1976); *see also State, DEP v. Larchmont Farms,* 266 *N.J.Super.* 16, 26–29, 628 *A.*2d 761 (App.Div.1993), *certif. denied,* 135 *N.J.* 302, 639 *A.*2d 301 (1994).

As no sanctions have been imposed, and as no criminal proceeding has yet been commenced, much less concluded, we need not explore the consequences, for double jeopardy purposes, of the imposition of any penalties by the Board. *See United States v. Halper,* 490 *U.S.* 435, 109 *S.Ct.* 1892, 104 *L.Ed.*2d 487 (1989); *State v. Womack,* 145 *N.J.* 576, 679 *A.*2d 606 (1996), *cert. denied,* —— *U.S.* ——, 117 *S.Ct.* 517, 136 *L.Ed.*2d 405 (1996).

The judgment is affirmed.