NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3913-14T2

IN RE READOPTION OF
N.J.A.C. 14:2.
_________________________________________

 Argued January 26, 2017 – Decided August 18, 2017

 Before Judges Hoffman and O'Connor.

 On appeal from the New Jersey Board of
 Public Utilities, Docket No. AX14070647.

 James H. Laskey argued the cause for
 appellants Association of Environmental
 Authorities of New Jersey, New Jersey
 Section of the American Water Works
 Association, and National Association of
 Water Companies, New Jersey Chapter (Norris,
 McLaughlin & Marcus, PA, attorneys; Mr.
 Laskey, of counsel and on the brief;
 Nicholas J. Dimakos, on the brief).

 Yao Xiao, Deputy Attorney General, argued
 the cause for respondent New Jersey Board of
 Public Utilities (Christopher S. Porrino,
 Attorney General, attorney; Andrea M.
 Silkowitz, Assistant Attorney General, of
 counsel; Mr. Xiao, on the brief).

PER CURIAM

 Appellants, the Association of Environmental Authorities of

New Jersey, the New Jersey Section of the American Water Works
Association, and the National Association of Water Companies,

New Jersey Chapter, comprise of water and wastewater companies

and authorities. Appellants challenge the validity of N.J.A.C.

14:2-4.2(c)1 (regulation), readopted by respondent Board of

Public Utilities (BPU) on March 16, 2015. Among other things,

appellants contend the BPU exceeded its statutory authority when

it readopted this regulation. We remand for further

proceedings.

 I

 In 1994, the Legislature enacted the Underground Facility

Protection Act (UFPA or Act), N.J.S.A. 48:2-73 to -91. "[T]he

Legislature enacted the UFPA to protect both the public from the

risk of harm and the utility companies from unnecessary losses."

Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J.

576, 582 (2013). The Act establishes a "One-Call Damage

Prevention System" (System) to protect underground facilities,

commonly referred to as pipes, mains or lines, because these

facilities are frequently subject to accidental damage from

excavating equipment and explosives. See James Constr. Co. v.

Bd. of Pub. Utils., 298 N.J. Super. 355, 360 (App. Div. 1997).

1
 In their brief, appellants do not identify the specific
regulation or regulations in N.J.A.C 14:2 they challenge, but it
is evident from their arguments their attack is limited to the
readoption of N.J.A.C. 14:2-4.2(c).
 2
 A-3913-14T2
Under the Act, underground facilities include those carrying

water and wastewater.

 The Act requires that, before performing an excavation, an

excavator must "notify the [One-Call System] . . . of his intent

to engage in excavation or demolition not less than three

business days and not more than [ten] business days prior to the

beginning of the excavation or demolition." N.J.S.A. 48:2-

82(a). Once an excavator notifies the System, the One-Call

center informs the applicable underground facility operators of

the pending excavation. See N.J.A.C. 14:2-4.2. Operators are

then required to mark out the facility within three business

days. N.J.S.A. 48:2-80(a)(2). The Act defines an operator as a

person or entity that owns, operates, or controls the operation

of an underground facility, but does not include a "homeowner

who owns only residential underground facilities, such as an

underground lawn sprinkler system or an underground structure

for a residential low-voltage lighting system." N.J.S.A. 48:2-

75.

 The Act designated the BPU as the appropriate State agency

to provide policy oversight to the System and to enforce the

provisions of the Act. N.J.S.A. 48:2-74. In accordance with

this mandate, the BPU adopted regulations to implement the Act.

See N.J.A.C. 14:2-1.1 to -6.10. The regulation at issue in this
 3
 A-3913-14T2
appeal, N.J.A.C. 14:2-4.2(c), initially adopted in 2007, 39

N.J.R. 4435 (Oct. 15, 2007), was readopted on March 16, 2015, 47

N.J.R. 659-61 (Mar. 16, 2015). N.J.A.C. 14:2-4.2(c) is set

forth below; for context we also include N.J.A.C. 14:2-4.2(b):

 (b) Within three business days after
 receiving information from the One-Call
 center regarding a planned excavation or
 demolition, an underground facility operator
 shall do either of the following:

 1. If the underground facility
 operator owns, operates or
 controls any underground
 facilities on the site, the
 underground facility operator
 shall mark out the site as
 required under N.J.A.C. 14:2-5,
 except if a facility is exempt
 from mark out requirements under
 N.J.A.C. 14:2-4.1(b) or (c). If
 an underground facility operator
 does not own or operate a
 facility, but controls it, the
 operator is responsible for
 compliance with this paragraph; or

 2. If the underground facility
 operator does not own, operate or
 control any underground facilities
 on the site, the underground
 facility operator shall make a
 reasonable effort to notify the
 excavator of that fact.

 (c) For the purposes of (b) above, an
 underground facility operator shall be
 deemed to control all portions of an
 underground facility carrying metered
 service, which are not located on the
 customer's side of the meter, regardless of
 who owns the property. For example, if a
 4
 A-3913-14T2
 residential electric customer owns an
 underground electric line, which provides
 electricity from the street to the
 customer's electric meter in an area served
 by overhead electric lines, the electric
 utility shall be deemed to control that
 underground electric line.

 [N.J.A.C. 14:2-4.2(b) and (c) (emphasis
 added).]

 In accordance with the rule-making procedures of the

Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15,

before the readoption of N.J.A.C. 14:2, the BPU invited comments

from the public. See N.J.S.A. 52:14B-4(a). Appellants provided

comments in opposition to the readoption of the subject

regulation. The BPU provided responses to appellants' comments,

but declined to make any changes to it or any other regulation

in N.J.A.C. 14:2. We address the relevant comments and

responses.

 It is not disputed that, unlike electric or gas companies,

appellants' members typically do not own the lines which extend

from their lines under a public right-of-way and the customer's

building or meter. The line from the road or curb to the

customer's building is generally owned by the customer.

Appellants commented the language in N.J.A.C. 14:2-4.2(c) is

unreasonable because it compels a service provider, which merely

 5
 A-3913-14T2
uses a line to carry its commodity, to mark out the line even if

the line is owned, operated, or controlled by another.

 The BPU rejected appellants' comment, responding as

follows:

 There is a risk to underground facilities,
 including water facilities, that the
 Legislature has sought to protect through
 the Underground Facility Protection Act
 (UFPA) and this chapter is designed to
 effectuate. Transferring this
 responsibility from an operator to a
 homeowner would not serve this public
 policy. Additionally, Federal standards for
 state one-call programs call for the
 inclusion of all underground facility
 operators.

 [47 N.J.R. 659(a) (March 16, 2015).]

 Without providing a specific citation, the BPU claimed the

Act provided it with the authority to compel a service provider

to mark out a line it neither owns, operates or controls, as

long as the provider uses the line. The BPU stated:

 Under the One-Call statute, if a utility
 delivers metered service, it controls the
 operation of the utility line up to (and
 often including) the meter, regardless of
 who owns the line. This is evidenced by the
 utility's authority to prosecute any person
 who taps into this line to divert utility
 service. Since the utility controls the
 line, it is the underground facility
 operator who is responsible for marking the
 facility under the One-Call program. This
 is a sensible policy because residential
 utility lines on the utility's side of the
 6
 A-3913-14T2
 meter generally have more capacity than
 customer-controlled utility lines on the
 customer's side of the meter. Therefore,
 the risk posed by an excavator hitting the
 utility controlled line is much greater than
 the risk for a smaller, customer-controlled
 line behind the meter. This distinction
 applies to both residential and non-
 residential facilities. If a large
 commercial utility customer has installed
 underground utility lines on its side of the
 meter, the customer is responsible for
 locating those lines, not the utility. As
 such, the Board of Public Utilities (Board)
 declines to adopt the recommended change.

 [Ibid. (Emphasis added).]

 Appellants also commented that, even if their members are

obliged under the Act to conduct mark-outs, the members do not

have immunity should a property owner assert a claim for

trespassing as a result of a member entering an owner's property

to conduct a mark-out. The BPU responded:

 Pursuant to the Board's rules at N.J.A.C.
 14:3-3.6 and 3A.1(a)5i, a utility shall have
 the right to reasonable access to a
 customer's premises and may discontinue
 service in appropriate circumstances if
 access is refused. Additionally, utility
 providers routinely access customer
 premises, including in response to
 emergencies. As such, the Board declines to
 adopt the recommended change.

 [Ibid.]

 7
 A-3913-14T2
 II

 On appeal, appellants contend the BPU's decision to readopt

the regulation without change was arbitrary, capricious, and

unreasonable, as evidenced by its responses to their comments.

Appellants contend the responses do not provide a justification

to readopt the regulation without any changes, and urge we set

the regulation aside. Before we address appellants' arguments,

we briefly summarize the law that governs our review.

 Regulations adopted by administrative agencies are accorded

substantial deference, provided they are consistent with the

terms and objective of the governing statute. Nelson v. Bd. of

Educ., 148 N.J. 358, 364-65 (1997). An administrative agency

may not "extend a statute to give it a greater effect than its

language permits." GE Solid State, Inc. v. Dir., Div. of

Taxation, 132 N.J. 298, 306 (1993). Thus, "when the provisions

of the statute are clear and unambiguous, a regulation cannot

amend, alter, enlarge or limit the terms of the legislative

enactment." Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 294

(App. Div. 2014) (quoting L. Feriozzi Concrete Co. v. Casino

Reinvestment Dev. Auth., 342 N.J. Super. 237, 250-51 (App. Div.

2001)). "[A]ny regulation or rule which contravenes a statute

is of no force, and the statute will control." L. Feriozzi,

 8
 A-3913-14T2
supra, 342 N.J. Super. at 251 (quoting Terry v. Harris, 175 N.J.

Super. 482, 496 (Law Div. 1980)).

 Courts are required to intervene if an agency's action is

inconsistent with the legislative mandate. See Williams v.

Dep't of Human Servs., 116 N.J. 102, 108 (1989). "[W]e have

invalidated regulations that flout the statutory language and

undermine the intent of the Legislature." In re Adoption of

N.J.A.C. 7:26B, 128 N.J. 442, 450 (1992). Our review is limited

to an examination of whether: (1) the action offends the State

or Federal Constitution; (2) the agency's action violates

express or implied legislative policies; (3) there is an absence

of substantial evidence to support the agency's findings; and

(4) in applying the legislative policy to the facts, the agency

failed to reach a conclusion based on the relevant factors.

George Harms Constr. Co., Inc. v. N.J. Tpk. Auth., 137 N.J. 8,

27 (1994).

 Under the APA, an agency "shall consider fully all written

and oral submissions respecting the proposed rule," N.J.S.A.

52:14B-4(a)(3), and prepare for the public a report providing

the agency's response to the comments submitted. N.J.S.A.

52:14B-4(a)(4). Responses must be meaningful, reasoned and

supported. See Animal Prot. League of N.J. v. N.J. Dep't of

Envtl. Prot., 423 N.J. Super. 549, 573-74 (App. Div. 2011)
 9
 A-3913-14T2
("[d]isagreement with a reasoned, supported agency determination

does not give rise to an APA violation"), certif. denied, 210

N.J. 108 (2012). In fact, "[t]he purpose of the APA rulemaking

procedures is 'to give those affected by the proposed rule an

opportunity to participate in the process, both to ensure

fairness and also to inform regulators of consequences which

they may not have anticipated.'" In re Provision of Basic

Generation Serv. for Period Beginning June 1 2008, 205 N.J. 339,

349 (2011) (quoting In re Adoption of 2003 Low Income Hous. Tax

Credit Qualified Allocation Plan, 369 N.J. Super. 2, 43 (App.

Div.), certif. denied, 182 N.J. 141 (2004)).

 Appellants argue the Act does not provide and the BPU

cannot justify how a service provider is deemed to control a

line merely because it uses the line to transmit its product.

Appellants also challenge the BPU's conclusion a service

provider controls a water line merely because the provider has

the power to prosecute a party who taps into such a line through

which the provider's water is flowing and unlawfully divert it.

Appellants note it is the water itself that is confiscated when

diverted under unlawful circumstances, not the line itself.

 Appellants further attack the BPU's claim large commercial

customers that have installed underground utility lines on their

"side of the meter" are responsible for locating their lines for
 10
 A-3913-14T2
mark outs. Appellants point out meters are commonly located

adjacent or close to a customer's building. Thus, most of a

commercial customer's line is not on the customer's side of the

meter. Therefore, service providers have the task of locating

most of the line between the meter and the road for their

commercial customers, which are generally difficult to locate.

 On the question of their members' vulnerability to trespass

claims, appellants dispute the BPU's conclusion N.J.A.C. 14:3-

3.6 and N.J.A.C. 14:3A.1(a)(5)(i) provide immunity. Appellants

note N.J.A.C. 14:3-3.6 provides a utility reasonable access to a

customer's premises, as well as to any property on the premises

furnished by the facility, but only for the purpose of

"inspecting" the premises incident to the rendering of service,

including "reading meters; inspecting, testing, or repairing its

facilities used in connection with supplying the service; or the

removal of its property." Appellants observe this regulation

does not provide utilities access to conduct mark outs.

 Appellants further note N.J.A.C. 14:3-3A.1(a)(5)(i) merely

provides the utility shall have the right to suspend, curtail,

or discontinue service if the customer refuses reasonable access

to the customer's premises in accordance with N.J.A.C. 14:3-3.6.

 The BPU's response to appellants' arguments includes, in

part, what the BPU provided in response to appellants' comments
 11
 A-3913-14T2
when the readoption of N.J.A.C. 14:2 was pending. The BPU also

provides additional reasons in its brief for readopting the

subject regulation. Although we have considered these

additional reasons, our role is to review the responses the BPU

provided to the comments submitted when the subject regulation

was pending readoption, not the additional justifications an

agency includes in its brief to explain its previous actions.

 "The grounds upon which an administrative order must be

judged are those upon which the record discloses that the action

was based[,]" and not upon an after-the-fact explanation of the

administrative agency's decision. In re Petition of

Elizabethtown Water Co., 107 N.J. 440, 460 (1987) (quoting Sec.

and Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct.

454, 459, 87 L. Ed. 626, 633 (1943)). See also In re N.J.A.C.

7:1B-1.1 Et Seq., 431 N.J. Super. 100, 139 (App. Div. 2013)

(noting the Department of Environmental Protection's attempt to

rehabilitate web postings created after promulgating various

rules by asserting additional explanations in its brief was

inappropriate, stating "[a]n appellate brief is no place for an

agency to try and rehabilitate its actions.").

 We question, without deciding, the BPU's claim that: (1)

the Act provides authority for the premise the mere use of a

line to deliver a product is commensurate with operating or
 12
 A-3913-14T2
controlling it; (2) a utility is deemed to control a line if the

utility can prosecute a person who taps into and diverts the

service provided through that line; and (3) N.J.A.C. 14:3-3.6

and N.J.A.C. 3A.1(a)5(i) immunize a service provider from a

claim of trespassing if its agent or employee enters another's

property to mark out a line.

 We recognize the Legislature has

 determine[d] that it is in the public
 interest for the State to require all
 operators of underground facilities to
 participate in a One-Call Damage Prevention
 System and to require all excavators to
 notify the One-Call Damage Prevention System
 prior to excavation or demolition.

 [N.J.S.A. 48:2-74.]

However, as previously addressed, with the exception of

homeowners who own residential underground facilities, an

"operator" is a person or entity that owns, operates, or

controls an underground facility. N.J.S.A. 48:2-75. A

significant issues is whether appellants members are operators

under the Act.

 In our view, the responses the BPU provided to appellants'

comments when the subject regulation was pending readoption

neither fully addressed appellants' comments nor explained why

N.J.A.C. 14:2-4.2(c) warranted readoption without any change.

Thus, it is not clear from the agency's responses whether it
 13
 A-3913-14T2
fully considered appellants' comments, as statutorily required

under the APA. N.J.S.A. § 52:14B-4(a)(4). See Animal Prot.

League of N.J., supra, 423 N.J. Super. at 572 ("Public comments

should be "given a meaningful role" in the process of rule

adoption"). The responses provided raises the question whether

appellants' comments were given the consideration required by

the APA, which is significant because, under the APA, any rule

not adopted in substantial compliance with the Act is invalid,

see N.J.S.A. 52:14B-4(d).

 That said, it would be premature to set aside N.J.A.C.

14:2-4.2(c) when further exposition of the BPU's reasoning may

well elucidate why it determined no change to this regulation

was warranted. See, e.g., Animal Prot. League of N.J., supra,

423 N.J. Super. at 575 (even if the agency misconstrued or

perhaps exaggerated the comments and support for its actions,

"we cannot say that such response in isolation (or even assuming

a minimal number of other such responses) would support a

finding that respondents violated the APA").

 Therefore, we remand this matter to the BPU to enable it to

amplify its responses to appellants' comments and fully explain

its reasons for readopting N.J.A.C. 14:2-4.2(c) without change.

The BPU shall have ninety days to provide its amended responses

to appellants' comments. If it deems appropriate, the BPU is
 14
 A-3913-14T2
not foreclosed from proposing an amendment to N.J.A.C. 14:2-

4.2(c). If it decides to do so, BPU shall be afforded the time

to which it is entitled under the APA.

 Remanded for further proceedings consistent with this

opinion. We do not retain jurisdiction.

 15
 A-3913-14T2