**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2475-15T2

IN THE MATTER OF THE APPLICATION OF

    FREDERIC FEIT, M.D.
    LICENSE NO. 25MA05617400

FOR REINSTATEMENT OF LICENSURE TO
PRACTICE MEDICINE IN THE STATE OF
NEW JERSEY

_____

Argued December 6, 2017 — Decided August 2, 2018

Before Judges Fuentes, Koblitz and Manahan.

On appeal from the New Jersey State Board of
Medical Examiners.

Michael Chazen argued the cause for appellant
Frederic Feit, M.D.

Joshua M. Bengal, Deputy Attorney General,
argued the cause for respondent Board of
Medical Examiners (Christopher S. Porrino,
Attorney General, attorney, Andrea M.
Silkowitz, Assistant Attorney General, of
counsel; Megan K. Cordoma, Deputy Attorney
General, on the brief).

PER CURIAM

    Appellant Frederic Feit is a physician. On September 26,

2006, he was indicted by a State Grand Jury on charges involving

fraudulent billing practices from January 15, 1998 to March 5, 2004. Specifically, Indictment No. 06-09-0108 charged Dr. Feit with two counts of second degree health care claims fraud, N.J.S.A. 2C:21-4.3(a), and one count of second degree theft by deception, N.J.S.A. 2C:20-4(a).

On December 24, 2008, Dr. Feit, represented by private counsel, negotiated an agreement with the State through which he pled guilty to third degree theft by deception, N.J.S.A. 2C:20-4(a). In providing a factual basis for this crime, Dr. Feit admitted that he engaged in fraudulent billing practices and received improper payments from insurance companies in an amount between $500 and $75,000. On April 2, 2009, the Criminal Part sentenced Dr. Feit to a five-year term of probation, conditioned on paying $578,978.12 in restitution[1], a $15,000 fine, and other mandatory fees and penalties.

Dr. Feit filed a direct appeal to this court challenging his conviction based on: (1) an alleged inadequate factual basis; (2) his attorney's failure to apprise him of the collateral disciplinary ramifications his criminal conviction would have on his license to practice medicine; (3) his obligation to pay

---

[1] The court initially ordered Dr. Feit to pay restitution at the rate of $100,000 per year. However, with the consent of the Attorney General, the court subsequently reduced the amount of the payments to $250 per month.

restitution; and (4) the excessiveness of the fine imposed by the court.  We rejected these arguments and affirmed his conviction and sentence in an unpublished opinion.  State v. Frederic Feit, No. A-4940-08 (App. Div. May 19, 2010) (slip op. at 1).

On February 25, 2009, the Attorney General filed an Administrative Complaint with the State Board of Medical Examiners (Board), seeking disciplinary sanctions against Dr. Feit based on conduct that constituted "dishonesty, fraud, deception, misrepresentation, false promise, and/or false pretense[,] in violation of N.J.S.A. 45:1-21(b) . . . ."  The disciplinary action was also predicated on Dr. Feit's conviction of a crime that involved "moral turpitude" or related adversely "to activity regulated by the Board pursuant to N.J.S.A. 45:1-21(f)."  The Complaint also alleged that Dr. Feit engaged in "professional misconduct" in violation of N.J.S.A. 45:1-21(e).  The Attorney General urged the Board to suspend or revoke Dr. Feit's medical license, assess civil penalties and costs, including reimbursing the State for the cost of these proceedings, and impose any other relief the Board may deem just and equitable.

Represented by private counsel, Dr. Feit filed an answer in which he admitted to pleading guilty to committing a criminal offense, but refuted the specific disciplinary charges.  Shortly thereafter, the Attorney General filed a motion for Summary

Decision urging the Board to decide this disciplinary action as a matter of law pursuant to N.J.A.C. 1:1-12.5(b). After reviewing the evidence presented by the parties and considering the oral arguments from counsel, the Board granted the Attorney General's motion. The Board found "undisputed" that Dr. Feit "knowingly entered into a guilty plea and made sworn admissions that he was guilty of theft by deception for a period in excess of six years." The Board relied on Dr. Feit's "sworn admissions and [his] conviction [to find that] that the conduct he pled guilty to involved a crime of moral turpitude in violation of [N.J.S.A.] 45:1-21(f)."

In a Final Order Granting Summary Decision dated August 6, 2009, the Board suspended Dr. Feit's license to practice medicine in this State for five years. The Board ordered that the first two years were to be "an active suspension and the remaining three . . . years to be stayed and served as a period of probation." The Board conditioned the restoration of his medical license upon Dr. Feit complying with seven clearly worded conditions. Of particular relevance here, condition number four stated:

> Any resumption of respondent's active practice of medicine in New Jersey shall include limitations on practice setting or billing including at a minimum that respondent shall either work in a setting where he has no responsibility for billing or the imposition of a Board approved billing monitor at

4

respondent's expense.  <u>The parameters of any limitations shall be determined by the Board in its discretion at the time of resumption of practice and may include any other limitations deemed appropriate at the time of reinstatement</u>.

[(Emphasis added).]

On August 1, 2012, Dr. Feit made his first application for the restoration of his medical license.  He appeared before the Board pro se.  The Board referred the matter to the Preliminary Evaluation Committee (Evaluation Committee).  After considering Dr. Feit's testimony and reviewing the records that formed the basis for the suspension, the Evaluation Committee recommended that the Board deny his reinstatement and expressed particular concern about Dr. Feit's "lack of insight, remorse and accountability regarding [his] criminal conviction . . . ."  The Evaluation Committee found his unwillingness to accept responsibility for his criminal conduct indicated Dr. Feit was a risk for recidivism.

The Evaluation Committee found particularly troubling the following statements Dr. Feit made in an essay he wrote "for the PRIME[2] course dated August 30, 2011 . . . ."  In this essay, Dr.

_____

[2]  "PRIM-E" is an acronym for "Professional Renewal in Medicine (through) Ethics." This course was "an educational intervention for health care professionals who are having conflicts with their licensing boards and are required to take refresher education in

Feit stated: "[I]nsurance companies use their influence with the medical [B]oard and the [A]ttorney [G]eneral to destroy physicians treating intractable pain syndromes, rather than paying for services[.]" The Evaluation Committee highlighted Dr. Feit's testimony that he "could think of no ethical violation on [his] part which would have led the Board to require [him] to take the PRIME course."

In a letter dated September 23, 2011, addressed to William V. Roerder, Esq., the Board's Executive Director, Dr. Russell L. McIntyre, the Professor and Course Director, wrote:

> Dr. Feit stated that in December, 2008, he pled guilty to "theft by deception" . . . [and] because of this, he understood why the medical board had no choice but to rule accordingly on the evidence of this plea. . . . And, despite the fact that his attorney was "well aware" that he never committed this billing infraction, the attorney put him in a "state of panic" by repeatedly telling him[,] "I guarantee you will go to prison for seven years if you don't take the deal."[3]

professional ethics and boundaries." PRIM-E was jointly offered by the Center for Continuing and Outreach Education at Rutgers University Biomedical and Health Sciences and Bio Ethics Consulting, LLC. PRIM-E is no longer offered. PRIME-E: Professional Renewal in Medicine [Through] Ethics, Rutgers Robert Wood Johnson Medical School, http://prime.rwjms.rutgers.edu (last visited July 23, 2018).

[3] The Criminal Part denied Dr. Feit's petition seeking post-conviction relief (PCR) based on ineffective assistance of trial counsel. This court affirmed the Criminal Part's decision and noted:

Finally, the Evaluation Committee found that "the quality of the medical records" Dr. Feit provided from his New York practice showed he was "deficient in that examinations were not performed prior to prescribing medication." In a letter dated April 15, 2013, the Board informed Dr. Feit that it had voted to accept the Evaluation Committee's findings and recommendations to deny his application for reinstatement. In reaching this decision, the Board noted that it "could not fashion any plan for reinstatement with limitations which would address [Dr. Feit's] lack of insight,

---

> [The PCR judge] found defendant's claim of innocence "not viable" because defendant's admissions at the time of his guilty plea constituted an acknowledgment that he sent in the wrong code for his billings and "clearly satisfied each element of theft by deception." [The PCR judge] found the expert opinion regarding the [billing] code to be irrelevant:
>
> > [A]ll that was required for the defendant's conviction of theft by deception was that the defendant purposely deceived insurance carriers by billing for services that he fraudulently claimed he performed on his patients. <u>Simply put, the defendant defrauded insurance carriers by billing them for procedures he claimed he performed, but did not, in fact, perform</u>.
>
> [<u>State v. Frederic Feit</u>, No. A-3120-14 (App. Div. June 14, 2016) (slip op. at 4-5) (emphasis added).]

remorse, and accountability." The Board also adopted the Evaluation Committee's decision to "not entertain another application for reinstatement prior to one . . . year from the date of this letter."

In a letter dated July 30, 2014 written by an attorney, Dr. Feit again petitioned the Board to reinstate his medical license. On October 22, 2014, Dr. Feit and his attorney appeared before the Board's North Jersey Preliminary Evaluation Committee (North Jersey Committee) "to discuss his petition for reinstatement." The record shows that Dr. Feit continued to impugn the validity of his criminal conviction. As an indication of the level of his obduracy, we note that at the time Dr. Feit appeared before the North Jersey Committee, this court had issued its opinion upholding his criminal conviction and sentence. Despite this, Dr. Feit claimed before the North Jersey Committee that he was the victim of ineffective assistance of trial counsel:

> Essentially, I was led by my prior attorney to plead guilty to billing for fluoroscopically guided injections. Upon that poor advice of [c]ounsel that I followed that I did plead guilty, and I recognized that the Board took appropriate actions to discipline a physician that violated billing regulations. I take the responsibility for that. I am remorseful for causing the Board this necessity.

At the end of the hearing before the North Jersey Committee,

Dr. Feit's counsel asked him the following questions:

> Q. There [was] some concern previously when
> you sought reinstatement of your license about
> certain comments that you made regarding your
> guilt and what was stated before the Judge and
> the veracity of those statements. Do you
> understand that in light of what happened in
> your criminal case, that the Board indeed took
> the proper action against you?
>
> A. Yes. And I do not feel that the Medical
> Board is in any way influenced by insurance
> companies or other agencies.
>
> Q. Those comments that you may have made at
> your previous hearing, do you believe they
> were the product of frustration over your
> situation?
>
> A. They were the product of frustration, yes.[4]

After evaluating the history of the case and the evidence of

compliance with the conditions of his probation, the North Jersey

Committee recommended that the Board offer Dr. Feit a "Consent

Order of Reinstatement" conditioned on being monitored by "a Board

approved practice monitor" who would review ten patient charts a

---

[4] Despite these reaffirmations of criminal culpability, appellate counsel included in the appendix the report of a physician retained by Dr. Feit in support of his PCR petition before the Criminal Part. This physician reviewed materials provided by counsel and opined, "Dr. Feit's so-called guilty plea did not acknowledge any guilty conduct. . . . He should not have pled guilty in the first place." The PCR Judge found this physician's opinion "irrelevant." State v. Frederic Feit, No. A-3120-14 (June 14, 2016) (slip op. at 4).

month, meet personally with Dr. Feit on a monthly basis, and "submit quarterly reports to the Board."

In addition to reviewing Dr. Feit's billing procedures, the practice monitor would also personally observe Dr. Feit perform "any invasive procedure (including spinal blocks) . . . for a minimum of 12 cases with a final report to the medical director of the Board." These probationary conditions "would be in place for a minimum of two years . . . until further order of the Board." Dr. Feit would be permitted to perform invasive procedures without supervision only after the medical director reviewed the reports and issued written authorization.

The Board tabled the North Jersey Committee's recommendations "due to serious concerns regarding [Dr. Feit's] quality of care in performing invasive procedures and his absence [from the] practice [of medicine] for the last five years." The Board recommended that "Dr. Feit undergo a general assessment of his competency to return to the practice of medicine inasmuch as [he] has been out for five years . . . ." The Board made clear that Dr. Feit "will not be able to perform interventional (invasive) pain management."

In an order entered on January 13, 2016, the Board reinstated Dr. Feit's license to practice medicine subject to "full compliance" with a comprehensive plan that requires Dr. Feit to

be under the complete supervision of a physician selected by the Board's Medical Director, for a minimum of three months. The scope of the Board's supervisory conditions covers every aspect of Dr. Feit's practice, from billing records to diagnosing a patient's medical condition and subsequent treatment plan. To implement this monitoring plan, the Board gave the supervising physician unfettered access to every aspect of Dr. Feit's medical practice; the supervising physician is required to personally observe the administration of all treatment plans, especially those cases that would require invasive procedures. The supervising physician also has the responsibility to report any impropriety and offer an opinion concerning when Dr. Feit would be ready to resume practicing medicine without supervision.

Finally, the Board ordered Dr. Feit to be solely responsible "for any costs or expenses" associated with the supervising physician. However, Dr. Feit cannot structure his billing procedures to pass the cost associated with this supervisory program to his patients in the form of medical fees. Finally, Dr. Feit may petition the Board for leave to be released from this supervisory program after he has treated a minimum of thirty patients who received "interventional pain management."

Against this record, Dr. Feit now appeals arguing the Board abused its discretion when it arbitrarily and capriciously imposed

this overly broad supervisory program as a condition of his reinstatement to practice medicine. Dr. Feit argues that the absence from the practice of medicine for five years alone, without any evidence to question his medical judgment, is facially insufficient to support these unwarranted, highly intrusive restrictions on his ability to practice medicine. He also argues that there is no legal authority in either the Uniform Enforcement Act, N.J.S.A. 45:1-1 to -55, or the Medical Practice Act, N.J.S.A. 45:9-1 to -27.9, to support the Board's decision to impose these restrictions on his license to practice medicine. Finally, without citing to evidence in the record for support, appellate counsel claims: "One can only imagine that most every physician, barring the possibility of a family member in the practice, will be reluctant, if not outright against, participating in such supervision."[5]

The Attorney General argues that a license to practice medicine is "always subject to reasonable regulation[s] . . . ."

---

[5]   Dr. Feit points out that the Board did not condition the restoration of his medical license upon retaining a billing monitor. According to Dr. Feit, this indicates the arbitrary nature of the Board's decision. The Attorney General attributes this omission in the Board's January 13, 2016 Order as "a ministerial error." Despite this acknowledgement, the Attorney General did not file a motion to supplement the appellate record to include a revised Final Order from the Board correcting this alleged ministerial error.

<u>Hirsch v. N.J. State Bd. of Med. Exam'rs</u>, 252 N.J. Super. 596, 604 (App. Div. 1991) (quoting <u>In re Polk License Revocation</u>, 90 N.J. 550, 570 (1982)).  In the course of exercising its discretionary authority, the Board's decisions carry a presumption of validity and reasonableness which appellant has the burden to overcome. <u>Bergen Pines Cnty. Hosp. v. Dep't of Human Servs.</u>, 96 N.J. 456, 477 (1984).  Here, the Board's decision to restrict Dr. Feit's medical license in this fashion was based on Dr. Feit's more than five-year absence from the practice of pain management, his chosen area of expertise.

Our standard of review of a State's administrative agency is well-settled:

> An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.  On appellate review, the court examines:
>
> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, ___N.J. ____, ____ (2018) (slip op. at 15-16) (citations omitted).]

With these standards in mind, we conclude the record supports the restrictions imposed by the Board on Dr. Feit's practice of medicine dedicated to pain management. The record shows the Deputy Attorney General who appeared before the North Jersey Committee of the Board asked Dr. Feit a series of questions designed to create a record of information relevant to his ability to resume his specialized pain management practice:

> Q. Have you given any thought to what, if any, reeducation you might need before entering a solo practice?
>
> A. Well, as a pain specialist, I have spent a huge amount of time studying pain management and staying as abreast as I can without being able to clinically see patients. But I spend quite a bit of time on the computer. If I recall, the Pri-Med course, I think I've taken virtually every CME and article they have dealing with chronic and intractable pain.
>
>    . . . .
>
> Q. Other than prescriptions for painkillers, for want of a better word, what other types of therapy or modalities would you use?
>
> A. Well, of course, there was the paraspinal nerve blocks, physical therapy modalities, such as electric stim, galvanic stimulation, or interferential, ultrasound, hydrocolator packs, TENS sometimes. Some people respond very well to TENS, some don't respond at all. Fluidotherapy, paraffin bath, I can mention many different physical therapies. They're

started on an active assisted range of motion exercises. They're taught head and neck exercises, William flexion exercises. Many different protocols, depending on the injuries they have, to start on a self-program of strengthening and reconditioning.

I tell them if they're going to need a knee replacement or hip replacement they should do their rehab before they have the surgery so they're in the best shape to recover.

At this point, the following exchange took place between Dr. Feit and a physician-member of the North Jersey Committee of the Board:

Q. You can appreciate medicine is . . . a component of a psychomotor modality, and you haven't practiced in five years. I'm well aware and I have no doubt you've taken all the academic courses and CME credits, but when you start seeing a patient again and you start doing the blocks, do you feel comfortable after five years just --

A. 100 percent, sir. I've never had a complication or an issue with an injection I've given in my life.

Q. But you haven't been out in five years and then start[ing] . . . up again.

A. That's correct. But comparing it to how when I first started my practice, I have infinite more knowledge than when I first started practice.

Q. Okay.

We consider this colloquy as an indication of the Board's deep concern for Dr. Feit's ability to resume the practice of this specialized area of medicine after more than a five-year absence

15

from day-to-day clinical contact with patients. Dr. Feit's optimistic assessment of his ability to resume his medical practice without missing a beat was obviously not shared by the medical professional members of the Board.

In In re Fanelli, our Supreme Court found guidance in dealing with this difficult question in Haley v. Medical Disciplinary Board, in which the Supreme Court of Washington stated:

> The daily practice of medicine concerns life and death consequences to members of the public. They have an understandable interest in the maintenance of sound standards of conduct by medical practitioners. The public has a right to expect the highest degree of trustworthiness of the members of the medical profession.
>
> [In re Fanelli, 174 N.J. 165, 178-79 (2002) (quoting Haley v. Medical Disciplinary Bd., 818 P.2d 1062, 1068 (Wash. 1991)).]

The Board's decision to require Dr. Feit to retain, at his expense, a supervising physician who will personally observe and monitor how he clinically interacts with his patients and performs highly intrusive and potentially dangerous medical procedures, is rationally based on his more than five-year hiatus from the practice of medicine and direct clinical contact with patients. The conditions imposed by the Board in its January 13, 2016 Order of Reinstatement are reasonable and consistent with the Board's regulatory powers and responsibilities to the public.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2475-15T2